THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY *vs.* GEORGE H. STEBBING.

*Railroad—Negligence—When case should not be Withdrawn from the Jury—Burden of Proof—Contributory negligence— Onus of proof on Plaintiff to show what Precautions should have been taken by the Defendant to avoid the Accident— Want of ordinary Care and Prudence—Speed of Locomotive— Municipal Ordinance—Proximate cause of Injury—Infer-*

*ence as to the Absence of Fault on the part of either Plaintiff or Defendant from the Disposition of men to Avoid danger— Misleading instruction.*

In an action against a railroad company to recover damages for injuries to the plaintiff, it is not proper to withdraw the case from the jury on the prayer of the defendant, though, assuming the truth of all the evidence on the part of the defendant, there would be no ground for recovery by the plaintiff, if the evidence on his part, if believed by the jury, might afford ground for the conclusion that there was such negligence on the part of the defendant as to entitle the plaintiff to recover.

In cases against railroad companies where negligence is the ground of action, and the plaintiff was not a passenger of the defendant at the time of the injury received, the onus of proof is upon the plaintiff to trace the cause of his injury directly to the fault or neglect of the defendant, and to do this he must show the circumstances under which the injury was received. And if from the circumstances thus shown it appears that the fault was mutual and concurrent, and the plaintiff is justly liable to have fairly imputed to him direct contributory negligence in the production of the accident, he shows himself to be dis-entitled to recover.

In an action against a railroad company to recover for injuries alleged to have been occasioned by the negligence of the defendant, it is not enough for the plaintiff to show that he has been injured by an accident upon the defendant's road, and thence to argue that the defendant is liable even *prima facie.* It is necessary for the plaintiff to establish by evidence circumstances from which it may be fairly inferred, that there is reasonable probability that the accident resulted from the want of some precaution which the defendant might and ought to have resorted to ; and further, that the plaintiff should also show with reasonable certainty what particular precautions should have been taken to avoid the accident.

If, in an action against a railroad company, it be shown that the plaintiff was injured by the locomotive and cars of the defendant, while operated by its agents on its road, and that such injury resulted directly from the want of ordinary care and prudence of its agents, and not from the want of ordinary prudence on the part of the plaintiff contributing to the injury, he is entitled to recover.

In an action for damages against a railroad company, to entitle the plaintiff to recover upon the ground that the locomotive of the

defendant by which he was injured, was running at a greater rate of speed than was allowed by an ordinance of the town through which it was passing, it must appear that the negligent breach of the duty imposed by the ordinance, was the direct and proximate cause of the injury complained of, no negligence on the part of the plaintiff contributing thereto, and that such injury would not have occurred but for the violation of that duty.

It would be improper to instruct the jury that in considering the question of negligence, it was competent for them, in connection with the facts and circumstances of the case, irrespective of the nature and force of such facts and circumstances, to infer the absence of fault on the part of either plaintiff or defendant, *from the known general disposition of men to avoid danger*. Such an instruction in many cases would be exceedingly misleading.

APPEAL from the Circuit Court for Cecil County.

This was an action brought by the appellee against the appellant, to recover damages for injuries sustained by the former through the alleged negligence of the latter. The Port Deposit Branch of the defendant railroad extends from Perryville to the lower end of Port Deposit; and the portion of the road that extends from that point to the depot, which was situate in the middle of the town, was built by the Columbia and Port Deposit Railroad Company, and at the time of the accident, the right to use the track of this road was enjoyed by the defendant under a lease from that company. Nearly midway between the end of the Branch of the defendant and the depot, a culvert had been constructed by the Columbia Railroad at the time the railroad was built, to convey the surface water from the north-side of the track, under the bed of the road, to the Susquehanna river. At the time the railroad and culvert were built, the water of the river came near to the edge of the culvert; but in process of time the river shore beyond the railroad, by reason of accretions and other causes, became fast land, and extended for a considerable distance from the railroad property into what had been the water of the river. Subsequently a

wooden trunk was placed there to convey the water flowing through the culvert, to the river; but in process of time this trunk rotted away, and the consequence was, that the water flowing into the culvert, being unable to escape, accumulated and formed a cesspool on the north-side of the railroad, and thus became a nuisance to persons residing in the vicinity. Upon complaint being made to the Columbia and Port Deposit Railroad Company, they caused a well to be dug on the town side of the culvert, which afforded a partial remedy; but the well was not dug deep or broad enough, and besides, was left by the railroad company uncovered. The town commissioners therefore directed Paxton, the town bailiff, to dig the well deeper and larger, to wall the same up, and cover it with stone. In pursuance of this direction, Paxton employed the plaintiff to assist him in hauling stone, and was so employed when the injury that gave occasion for this action occurred. The plaintiff himself testified that on the 25th of July, 1882, Paxton, assisted by him, was hauling large stones for the purpose of covering the top of said well; that Paxton had procured an old horse and the wheels and shafts of a horse cart, and the stones were swung under the axle-tree of the cart by means of a chain; that in this way, they had already hauled and deposited one large stone at a point on the culvert opposite the well, and two more stones were required; that during the morning of said day, after one stone had been deposited, Paxton and himself had returned to the quarry and procured another stone weighing five or six hundred pounds, and with the same swung under the cart, returned to said culvert; that the road by which they reached the culvert was through Frazier's alley, which opens upon the railroad property one hundred feet north of said culvert; that they then passed along and upon the property of the said railroad, and parallel to the track thereof, going south to said culvert; that the horse and cart were drawn on said culvert,

the horse's head being down the track in the direction of Perryville; that they then prepared to deposit the stone on the culvert; and the stone had just been deposited, when he looked up and saw the defendant's locomotive and train of cars; that the locomotive was then about ten feet from the horse; that before he could escape from between the wheels of the cart, the locomotive was upon him, and the horse at the same instant whirling away from the track, forced the cart back towards the track, and himself, the cart and the horse were all drawn by the collision up the railroad about fifteen or eighteen feet; that the locomotive wheels passed over his foot, which he supposes happened through his efforts to keep from being forced upon the track, when he was backed towards it, between the wheels of the horse cart; that his foot was subsequently amputated above the ankle; that he supposes he was on the culvert about five minutes before he was struck by the locomotive; that the train was what is known as the nine o'clock train from Perryville; but he did not himself know the hour, as he had no watch; that when he came upon the defendant's property at Frazier's alley, he had a clear view for about half a mile towards Perryville, and as he went towards the culvert he had his face towards Perryville, and no train was visible on the defendant's railroad; that when he was lowering the stone on the culvert, he could not see down the railroad very well, as the horse and Paxton were in front of him; that no whistle was blown by the locomotive, or bell rung, nor any signal of approach of the train given; that the train was moving at a speed exceeding ten miles an hour; that when he first had notice of the approach of the train, it was impossible to make his escape, as the train was on him in an instant. The case is further stated in the opinion of the Court.

*Exception:*—The plaintiff offered the following prayers:

1. If the jury find that on or about the 25th of July, 1882, the plaintiff was injured by the locomotive and cars

of the defendant, while operated by its agents on its road, and that said injury resulted directly from the want of ordinary care and prudence of the agents of the defendant, and not from the want of ordinary prudence on the part of the plaintiff, directly contributing to the injury, then the plaintiff is entitled to recover.

2. That even if the jury believe the plaintiff was guilty of negligence in being near defendant's track, under the circumstances testified to before them, still he will be entitled to recover in this action notwithstanding such negligence on his part; provided the jury believe that the injury would not have happened to him had the defendant used, in and about the management of the train that injured him, ordinary care and prudence in giving the usual and reasonable signals of its approach, and in running its train at the speed prescribed by the town Ordinance of Port Deposit; (if they find such ordinance;) and provided further, that they find the facts stated in the preceding instruction.

3. If the jury find the Ordinance of Port Deposit, offered in evidence by the plaintiff, then it was negligence in the defendant to run its cars through the village of Port Deposit, at a rate of speed exceeding ten miles an hour; and if the jury believe the defendant's cars were run through said village at a speed exceeding ten miles an hour, then the defendant was bound to use the highest possible degree of care and caution, which it had the means and power to employ, having regard to the business in which it was engaged.

4. In considering the question of negligence, it is competent for the jury, in connection with the other facts and circumstances of the case, to infer the absence of fault on the part of the plaintiff from the general and known disposition of men to take care of themselves, and keep out of the way of difficulty and danger.

5. If the jury believe that the defendant's 9 o'clock train, on the 25th of July, 1882, from Perryville to Port

Deposit, was provided with air-brakes for the prompt stopping of the train, but that the engine drawing said train was reversed, the tender thereof being in advance of the engine, and that by reason of said reversed position of the engine, the air-brakes could not be applied on that occasion to any portion of the train, except the tender of the engine; and shall further believe that the agents of defendant, by reasonable diligence and care, might have attached its engine to said train so that the air-brakes could have been applied to the entire train in case of emergency; and shall also believe, that if the said air-brakes had been in proper operation on all the cars, constituting defendant's train on the 25th of July, 1882, the injury complained of would not have happened to the plaintiff, then he is entitled in this action to recover, if he was injured in the manner stated in the declaration, unless by his own negligence he directly contributed to the injury.

6. If the jury believe defendant's 9 o'clock train, on the 25th of July, 1882, consisted of two coaches and a locomotive, all of which were supplied with a brake known as the "air-brake," and that by means of said brake the train could be stopped within a short distance, in case of emergency or danger, and that said brakes are for that reason placed upon railroad cars, and that this was known, or ought to have been known, to defendant's agents in charge of said train, then it was the duty of said agents to apply said brakes when it was reasonably necessary to avoid injury to persons or property on or near defendant's track; and if by want of ordinary care and diligence upon the part of said agents the locomotive was placed in such a position in relation to the said train, that air or steam could not be applied to all of said brakes on the cars constituting said train, and they were thereby rendered ineffective, or less effective in their operation than they otherwise would have been, then defendant was guilty of

negligence; and if the jury believe that had the engine been in such a position in relation to the said train, that the said air-brakes could have been operated on all the cars of the train by the agents in charge thereof, the plaintiff would not have been injured, then the plaintiff is entitled to recover in this action, if he was injured in the manner stated in plaintiff's first prayer.

7. If the jury believe that the air-brake is the best known appliance for the prompt and effective control of railroad trains, and was so known to the defendant, and in use on its railroad; and that its 9 o'clock train, and each and every car thereof was, on the 25th of July, 1882, provided with such a brake, but that in order to apply air or steam necessary for the working of said brakes, it was necessary that the engine drawing said train should not be attached thereto in a reversed position, and this fact was known to defendant's agents, then it was the duty of said agents to attach the engine to the cars, constituting such train, in the proper manner; and if by the use of ordinary care and diligence the said engine could have been so attached, but was not, then said agents were guilty of negligence; and if the jury further believe plaintiff was injured in consequence of defendant's agents being unable to stop said train, as speedily as they might have done by reasonable prudence and care, had the said engine been attached to said cars in a manner so as to operate on the air brakes of each and every car constituting said train, then plaintiff is entitled to recover in this action, provided the jury find the facts stated in plaintiff's first prayer.

And the defendant offered the following prayers:

1. That there is no evidence in this case legally sufficient upon which the plaintiff can recover.

2. That the plaintiff is not entitled to recover in this case, because, if he was injured by the engine of the defendant, the negligence of the plaintiff directly contributed to the injury.

3. That even if the jury believe that the defendant's engine was running at a greater rate of speed than the town Ordinance of Port Deposit permits; yet, nevertheless, the plaintiff cannot recover if the injury would not have happened, but for want of ordinary care and prudence on his part, directly contributing to the injury.

4. If the jury believe from the evidence, that the plaintiff, by his own negligence, or want of ordinary care and prudence, directly contributed to his injury, then he cannot recover, although the defendant, by the use of greater diligence, might have prevented the injury.

5. That the defendant, where there was no street, no crossing, had a right to an unobstructed track; that the plaintiff had no right to obstruct it; that if he did so, he cannot recover, unless the defendant had time and opportunity to perceive and to avoid the obstruction after it became an obstruction.

6. That even if the jury shall believe that the defendant's train omitted to give signals, by ringing the bell or sounding the whistle, the defendant is not responsible if the plaintiff, by want or omission of ordinary care and caution, contributed directly to cause the accident, and, that but for the want of the exercise of ordinary care and prudence on his part, the injury would not have happened.

7. That if the jury believe that the injury was occasioned by the concurrent and co-operating negligence of both plaintiff and defendant directly contributing to cause the injury, the jury have no right to apportion the several amounts of negligence due to each, and that the plaintiff cannot recover, unless the defendant had time and opportunity to prevent the accident, after seeing and knowing the situation of the plaintiff, when backed by his horse against defendant's engine or tender, if the jury shall find the fact of such action by the horse, and that it caused the accident.

8. If the jury believe that the plaintiff, by his own negligence, or want of ordinary care and prudence, directly contributed to his injury, then he cannot recover.

The Court (WICKES and STUMP, J.) granted the first third and fourth prayers of the plaintiff and rejected his second, fifth, sixth and seventh, and gave as a substitute for his second prayer, the following:

"Even if the jury believe the plaintiff was guilty of negligence in being near the defendant's track, under the circumstances testified to before them, still he will be entitled to recover in this action, notwithstanding such negligence on his part; provided the jury believe that the defendant did not use ordinary care and prudence in the management of the train that injured him, and that the want of such ordinary care and prudence was the direct cause of the injury."

The Court granted the third, fourth fifth, sixth, seventh and eighth prayers of the defendant, but refused its first and second. The defendant excepted. The jury gave a verdict for the plaintiff for $2500, and judgment was entered on the verdict. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, RITCHIE, and BRYAN, J.

*W. J. Jones*, and *Alexander Evans*, for the appellant.

*Albert Constable*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

We think the Court below was quite right in refusing to withdraw this case from the jury, on the prayers of the defendant. While the testimony as to the material facts of the case, was very conflicting, that given on the part of the plaintiff entitled him to have the weight and credibility of the whole evidence passed upon by the jury. For

33                    v. 62.

though it be true, if we assume the truth of all the evidence on the part of the defendant, there would be no ground for recovery by the plaintiff, yet the evidence on the part of the plaintiff, if believed by the jury, might well afford ground for the conclusion that there was such negligence on the part of the defendent as to entitle the plaintiff to recover. Whether the employés of the defendant in charge of the train ran the train at a greater rate of speed than that allowed by the ordinance of the town of Port Deposit, or whether they rang the bell to give warning of the approach of the train, are facts in regard to which the testimony is in direct conflict. They did not sound the whistle; and they were running the engine and tender backwards, in which position the air-brakes were powerless over the train. Both engineer and fireman prove that they saw the plaintiff and his fellow-laborer at work in near proximity to the railroad tracks, at considerable distance before reaching the spot; and that being so, it was their duty to avoid running upon them without giving signal or warning of approach. But both the engineer and fireman say that the train was slowed up, and was not running at the time of the accident, at a rate of speed exceeding from four to six miles an hour, and that the bell was continuously rung after leaving what is known as the Bank station, until the train reached the point of the accident. If this be so, clearly, there could be no fault or negligence imputed to the defendant; but the direct and proximate cause of the accident would be imputable to the negligence of the plaintiff, in putting himself in a place of possible danger, and in not looking out for the approach of the train. We do not, however, intend to intimate any opinion as to the proper conclusion to be drawn from the conflicting evidence, but leave that to be done by the jury, to whom the consideration of the facts belong.

In all these cases where negligence is the ground of the action, and the plaintiff was not a passenger of the defend-

ant at the time of the injury received, the *onus* of proof
is upon the plaintiff to trace the cause of his injury directly
to the fault or neglect of the defendant, and to do this he
must show the circumstances under which the injury was
received.    And if from the circumstances thus shown it
appears that the fault was mutual and concurrent, and the
plaintiff is justly liable to have fairly imputed to him
direct contributory negligence in the production of the
accident, he shows himself to be disentitled to recover.
*Frech vs. P. W. & B. R. Co.,* 39 *Md.,* 574 ; *Cooley on
Torts,* 673.    The principle laid down by an eminent Eng-
lish Judge, and which was approved by the Court in
Exchequer Chamber, and by the House of Lords, *(Daniel
vs. Metropolitan Ry. Co., L. R.,* 3 *C. P.,* 591 ; *Ibid.,* 5 *H.
L.,* 45,) is clearly a correct one, and that is, that it is not
enough for the plaintiff to show that he has been injured
by an accident upon the defendant's road, and thence to
argue that the defendant is liable even *prima facie.*    It is
necessary for the plaintiff to establish by evidence circum-
stances from which it may fairly be inferred that there is
reasonable probability that the accident resulted from the
want of some precaution which the defendant might and
ought to have resorted to; and further that the plaintiff
should also show with reasonable certainty what particu-
lar precautions should have been taken to avoid the acci-
dent.    Here, according to the contention of the plaintiff,
the accident resulted from the unauthorized rate of speed
with which the train was run through the town, and the
neglect to give signals of the approach of the train.    These
facts are material, and in regard to which, as we have
seen, the evidence is conflicting, making a question appro-
priate for the jury.

In regard to the first prayer, granted at the instance of
the plaintiff, as the statement of a general proposition,
it is unexceptionable.    It is very general in its terms, it
is true, and did not impart much instruction to the jury,

as to the value and legal bearing of any particular fact in proof. But the general legal proposition thereby formulated is free from error, however much it may be wanting in specific reference to the facts of the case.

But with respect to the third prayer of the plaintiff, which was granted, we think there was error. It was well calculated to mislead the jury. It declares that, under the town ordinance, it was negligence *per se* for the defendant to run its cars through the town at any rate of speed exceeding ten miles an hour; and if it did run its cars at any greater rate of speed, however small the excess, "the defendant was bound to use the highest possible degree of care and caution, which it had the means and power to employ, having regard to the business in which it was engaged." With respect to the two branches, or rather propositions, embraced in this instruction, it may be observed, that if the running of the train through the town at any rate of speed in excess of ten miles per hour be negligence *per se*, it would not have been easy for the defendant to escape the consequences of that negligence by the exercise of the degree of care required by the latter branch of the instruction, unless, indeed, it be shown that the negligent act of the defendant in violating the ordinance did not contribute to the production of the injury at all. The inconsistency aside however, the instruction is objectionable in other respects.

There is no question made of the municipal authority to pass the ordinance, and it simply provides "that no locomotive shall be propelled within the limits of Port Deposit at a greater rate of speed than ten miles per hour, and that any engineer or other person violating this ordinance shall be fined ten dollars for each and every offence."

This ordinance is general, and is for the protection of the public generally; but the neglect or disregard of the general duty thereby imposed for the protection of every one, can never become the foundation of a mere personal

right of action, until the individual complaining is shown to have been placed in position that gave him particular occasion and right to insist upon the performance of the duty to himself personally. The duty being due to the public, composed of individual persons, each person specially injured by the breach of duty thus imposed becomes entitled to compensation for such injury. But he must have been in a position to entitle him to the protection that the ordinance was designed to afford, and he must show how and under what circumstances the duty arose to him personally, and how it was violated by the negligence of the defendant to his injury. In other words, it must appear that the negligent breach of the duty imposed by the ordinance was the direct and proximate cause of the injury complained of, and that such injury would not have occurred but for the violation of that duty. *Hayes vs. Mich. Central R. Co.,* 111 *U. S.,* 228, 240, 241; *Penn. R. Co. vs. Hensil,* 70 *Ind.,* 569; *Cooley on Torts,* 657–8.

Now, this third prayer of the plaintiff is a mere abstraction, and therefore well calculated to mislead. It does not require the jury to find any causal connection between the negligent act in running the train in violation of the ordinance, and the injury complained of. If the defendant's train was in fact run through the town at a greater rate of speed than that allowed by the ordinance, it may be conceded that such running was of itself negligence, and a violation of the ordinance, for which the engineer would incur liability for the penalty prescribed. But while that may be so, it would be quite immaterial to the case of the plaintiff, unless it be shown that the injury complained of was occasioned by such unauthorized speed of the train, without any direct contributory negligence on the part of the plaintiff himself. If he knew of the near approach of the train in time to get out of the way of danger and failed to do so, he could have no right of action, though the train was run at a rate of speed greater than

that allowed by the ordinance. In such case, the fact that the train was run at an unauthorized rate of speed would, in no way, relieve him of the consequences of his own negligence, and afford him a right of action against the defendant. In the abstract form in which the instruction was given, and from the terms employed, the jury may have inferred that the defendant was liable merely because of the fact that the train was run at forbidden speed, and that such liability was wholly irrespective of any contributory negligence on the part of the plaintiff. For the reasons assigned, we think there was error in granting the third prayer of the plaintiff.

With respect to the fourth prayer of the plaintiff, which was granted, in view of the facts of the case, we think it ought to have been refused, or if granted at all, it ought to have been in a modified form, to avoid the possibility of misleading the jury. It is certainly true, the motive to self-preservation is a principle of our common nature, and it is but rational to presume, in the absence of evidence to the contrary, that parties act under its promptings in view of impending danger. But, in such cases as the present, there is a counter-presumption, when the proof does not show to the contrary, and that is, that every person charged with a duty involving the safety of himself or others, will perform that duty; so that in fact it is not often the case that these mere presumptions afford much assistance in arriving at correct or just conclusions. They ought not to be indulged to the exclusion of direct evidence to the contrary; and it is only where there is no reliable proof to the contrary, or there is rational doubt upon the evidence as to the acts or conduct of the parties, that such presumptions can properly be invoked. The jury ought not to be instructed in such terms as would justify them in acting upon the mere presumption of the absence of fault in either party, in disregard of the proof in the case, where there are facts and circumstances to be considered by them.

The form of the instruction in this case is the same as that used in several cases that have come before this Court, and where the instruction has been sanctioned; but the propriety of such instruction must always be determined with reference to the nature and state of the proof before the jury. It will not do to instruct them that it is competent to them, in connection with the facts and circumstances of the case, irrespective of the nature and force of such facts and circumstances, to infer the absence of fault on the part of either plaintiff or defendant, *from the known general disposition of men to avoid danger.* Such an instruction in many cases would be exceedingly misleading; and, we think, it was error to give it in this case in the form in which it was given.

It follows that the judgment below must be reversed and a new trial awarded.

