329 F.2d 738
 STATE OF MARYLAND for the Use of Gloria S. GEILS, surviving
widow, and Goswell W. Geils, 3rd, Leslie Ann Geils, Mary E.
Geils, Susan M. Geils, Andrew S. Geils and Sarah Geils,
surviving infant children of Roswell W. Geils, Jr.,
deceased, and Gloria S. Geils, administratrix of the Estate
of Roswell W. Geils, Jr., deceased, Appellants,
v.
BALTIMORE TRANSIT COMPANY, a body corporate, and Gerald M.
Harrison,Appellees.
 No. 8941.
 United States Court of Appeals Fourth Circuit.
 Argued Sept. 26, 1963.
Decided March 9, 1964.
 
 Paul Berman, Baltimore, Md., for appellants.
 Patrick A. O'Doherty and Frank X. Gallagher, Baltimore, Md., for appellees.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.
 J. SPENCER BELL, Circuit Judge.
 
 
 1
 The plaintiffs' intestate was killed at a street corner in the city of Baltimore when struck by a bus owned by the defendant Transit Company and driven by the individual defendant. Judgment was entered for the defendants upon a general verdict. Plaintiffs allege that the court erred in charging the jury as follows:
 
 
 2
 'I instruct you that ordinarily, a decedent is presumed to have exercised ordinary care for his own safety in accordance with the natural instinct of human beings to guard against danger, but where as here, evidence has been offered to show that the decedent failed to exercise ordinary care in a number of respects, you shall consider the proof which has been offered and determine whether you are persuaded by a preponderance of the evidence that he failed to exercise ordinary care, and you are not to rely upon the presumption.'
 
 
 3
 Both parties to this appeal concede, and we agree, that the federal courts are bound in diversity cases by the applicable state rules with respect to the effect to be given to presumptions, 'since the effect accorded these presumptions may substantially affect the rights of the parties and there is nothing in the Federal Rules to the contrary.' 5 Moore's Federal Practice 43.08. The plaintiffs had submitted a written request for an instruction to the jury that they might consider the presumption of due care in connection with the other evidence. The court rejected the request and instructed the jury as above set out. In this we find fatal error.
 
 
 4
 The principal Maryland case on this point is Grier v. Rosenberg, 213 Md. 248, 131 A.2d 737 (1957). In that case the plaintiff, a passenger, was injured by the sudden stopping of the bus. She sued the bus company, the bus driver, and one Rosenberg, who was the owner of an automobile which, the bus driver testified, cut sharply across his path and caused him to come to a sudden stop. The jury rendered a verdict for all three defendants. The plaintiff appealed from a judgment for the car owner, Rosenberg. The Court of Appeals of Maryland reversed the judgment and remanded the case for a new trial. In doing so the court pointed out that the plaintiff had offered evidence from which the jury could find ownership of the car in the defendant Rosenberg. She had asked for an instruction that from this evidence, if believed, a presumption arose that the car was being driven by the owner or by the owner's agent about the owner's business. The trial court refused to give the instruction because the defendant had offered evidence which conflicted with the presumption. The appellate court held failure to give the instruction was fatal. In a careful review of the Maryland decisions and authorities in the field of Evidence, Judge Prescott said that the presumption prevails and the jury should have been so instructed despite the fact that countervailing evidence was adduced upon the disputed presumption. The court said:
 
 
 5
 'In cases of this nature, after the plaintiff has offered proof of the ownership of the automobile in the defendant, if the defendant does not offer any evidence on the issue of agency, the Court should instruct the jury that if they find as a fact that the defendant owned the car, they must find that he is responsible for the negligence (if any) of the driver. If the defendant does present evidence to show that the alleged driver was engaged on business or a purpose of his own, it may be so slight that the Court will rule it is insufficient to be considered by the jury in rebuttal of the presumption, in which case the Court should grant the same instruction it would have granted if the defendant had offered no evidence on the issue. The evidence may be so conclusive that it shifts the burden or duty of going forward with the evidence back to the plaintiff, in which event the defendant would be entitled to a directed verdict, if the plaintiff does not produce evidence in reply, unless there is already evidence in the case tending to contradict defendant's evidence. Erdman v. Horkheimer & Co., supra, 169 Md. (204) 207, 181 A. 221; Fowser Fast Freight v. Simont, supra, 196 Md. (584) 588, 78 A.2d 178. The evidence, however, may fall between the two categories mentioned above, in which event the issue of agency should be submitted to the jury. Cf. 3 Md.Law Rev. 287, 288. It would be difficult, if not impossible, to lay down a rule, that would apply in all cases, as to when the evidence is so slight that it is insufficient to be considered by the jury in rebuttal of the presumption of agency, or so conclusive as to require a directed verdict for the defendant. These matters must depend upon, and be decided by, the facts developed in each individual case.'
 
 
 6
 The defendant in this appeal argues that Grier v. Rosenberg is not applicable because the evidence there offered in rebuttal of the presumption was so slight that the trial court would have been justified in holding that it was insufficient to be submitted to the jury in the face of the presumption, but such was not the holding of the court. Indeed, the appellant in the Grier case made the point in an effort to secure a reversal instead of a remand for a new trial, but the argument was rejected. The court expressly held that the conflicting evidence was enough to take the case to the jury.
 
 
 7
 The defendant here also argues that the presumption in Grier v. Rosenberg is different from the presumption of due care here considered and thus that case may not be taken as a precedent. With this argument we must also disagree, because first, we can find no case in Maryland which makes any such distinction and second, in reaching its decision the court reviewed and cited cases involving the presumption of due care in negligence cases in support of its opinion.
 
 
 8
 Our dissenting Brother similarly misinterprets Grier v. Rosenberg and would unduly restrict its rule. We perceive no basis in law or in logic for the suggested distinction; but, more importantly, Judge Prescott, speaking for the Maryland Court, explicitly pointed out that the precedents in that State recognize no basis for any distinction between the presumption that the decedent exercised due care for his self-preservation and the presumption of agency arising from the fact of ownership. And this observation of Judge Prescott is immediately followed by the very sensible question, '(Indeed, if the instruction be not granted, how is the jury to know of the presumption?'
 
 
 9
 On the other hand, the dissenter's analysis of Western Maryland R.R. v. State, to Use of Shirk, 95 Md. 637, 53 A. 969 (1902), overlooks a significant distinction. There the Maryland Court refused to apply the presumption because 'There (was) no room for a rational doubt, upon the evidence as to the acts and conduct of deceased.' Here, on the contrary, as all of us recognize, 'the evidence was sharply conflicting,' supplying the very basis for applying the presumption, which the court found lacking in Shirk.
 
 
 10
 The defendant cites us to State, for Use of Chenoweth v. Baltimore Contracting Co., 177 Md. 1, 6 A.2d 625 (1939), as authority to the contrary. Since there are passages in our record which seem to indicate that the trial court may have relied on that opinion, we have examined it at length. There the deceased was a car inspector, inspecting railroad cars and making minor repairs in a 'Gravity yard' operated by the defendant company in transferring coal from railroad cars to ships. The cars, after being emptied, were released from a tipple to coast down an incline, where they accumulated until sufficient in number to make up a train of empties. While cars were being thus accumulated, the deceased was inspecting and making minor repairs. Yard rules required that deceased display a blue flag in front of the car when working on it. No flag was displayed. Deceased's body was found under a car after it was 'bumped' forward and off the track by a string of empties. The plaintiff appealed from a directed verdict, contending that the presumption of due care should have been considered along with the conflicting evidence and should have carried the case to the jury. But the appellate court sustained the directed verdict, saying that the presumption would not survive proof to the contrary. The court pointed out that the undisputed evidence as to the position of the deceased's body was such that it left no basis for a presumption of due care. The only logical inference to be drawn from the position of the deceased's body was that he was standing between the cars or lying underneath them when the cars wer 'bumped' forward. The inference was so compelling, the court held, that the jury could not reasonably infer from the naked presumption of due care that the deceased was otherwise engaged, i.e., as the plaintiff theorized, that he was standing beside the track and was struck when the car was knocked off the rail. We think the opinion places this case in Judge Prescott's third category-- one in which the evidence is such that the burden of proof has been carried to the extent that even after taking the presumption into account, plaintiff was shown to be guilty of negligence as a matter of law and, for this reason, the court sustained the directed verdict.
 
 
 11
 We are also aware that in many states the rule as to presumptions is to the contrary-- that is, that the presumption survives only until conflicting evidence is offered. This is the rule suggested in the American Law Institute's Model Code of Evidence, Rule 704. It is the rule attributed to Thayer and suggested by Wigmore. But we are bound by the law of Maryland, and we might add that the Maryland rule is strongly supported by such eminent authorities as McCormick, Evidence 316, 317 (1954), and by the writings of Professor Morgan, who, contrary to his expressed opinions, finally acceded to the wishes of the committee in drafting the Model Code.
 
 
 12
 We are also supported in our view of the Maryland law by the opinion of Judge R. Dorsey Watkins in Jennings v. United States, 178 F.Supp. 516 (D.Md.1959). In that case the plaintiff's decedent was killed in an automobile accident resulting from his car's skidding on ice on a U.S. Government maintained parkway road in Maryland. The Government contended that the defendant was contributorily negligent in speeding and failing to observe the condition of the highway and to keep his car under control. After an exhaustive discussion of the applicable Maryland law, the judge carefully reviewed the conflicting evidence and concluded:
 
 
 13
 'On all the evidence and in view of the presumption of due care on the part of the deceased, the court is unable to find that the Government has met its burden of proving Stewart's contributory negligence by a fair preponderance of the evidence.
 
 
 14
 'The court therefore finds as a fact that Stewart was not guilty of contributory negligence.'
 
 
 15
 In a footnote the conscientious trial judge said: 'The question is a very close one, and the court's mind is more nearly in a 'state of equipoise or even doubt' than in any other case in which it has participated.' Here the court, performing the function of the jury in our case, was carefully weighing the presumption against both corroborating and conflicting evidence in compliance with his view of the Maryland law on the subject.
 
 
 16
 We are unable to acquiesce in the final suggestion in our colleague's dissenting opinion, that the presumption in Maryland that the decedent acted with due care stands on a parity with the presumption that the defendant was free from negligence and that therefore the district court should tell the jury at the retrial that the presumption as to the disposition to act in self-preservation applies equally to the defendant's driver. The comment is then added that the result would be a radical distortion and perversion. This comment would indeed be true, if the trial judge were to permit such a confusing double instruction, linking and treating as equal two entirely disparate and unequal ideas. The presumption with which we are concerned in this case may be invoked only where the injured person is unavailable because of the injuries suffered or because of death. Such incapacity is the just reason for the presumption; the premise upon which the presumption rests is lacking in the situation of this defendant.
 
 
 17
 The plaintiff has raised other issues, none of which merit extended discussion. The introduction of evidence to discredit statements of plaintiff's chief witness that he had an opportunity to observe the accident was within the court's discretion, if indeed that issue could be said to be collateral. Cf. Atkinson v. Atchison, T. & S.F.R.R., 197 F.2d 244, 246 (10 Cir. 1952).
 
 
 18
 We refrain from comment upon the conduct of counsel, feeling certain that the trial judge, now forewarned, can handle the matter. Nor does this imply the slightest criticism of the judge below, who exhibited the patience of Job.
 
 
 19
 We find no error in the court's failure to instruct the jury with reference to the doctrine of last clear chance, since the evidence furnished no basis for that issue.
 
 
 20
 Reversed and remanded.
 
 
 21
 HAYNSWORTH, Circuit Judge (dissenting).
 
 
 22
 I am unpersuaded that Maryland would attribute any such evidentiary effect to the presumption as the majority conclude on the basis of an opinion of the Maryland Court of Appeals dealing with a different presumption in a very dissimilar context.
 
 
 23
 Ninety-five years ago, the Maryland Court of Appeals, indeed, did hold that the presumption that a decedent acted with due care for his own protection was an evidentiary one to be considered as such by a jury.[1] Fourteen years later, some eighty-one years ago, it again held that the presumption of due care was an evidentiary one to be considered by the jury.[2] So far as we are informed or can discover, that Court has never since enunciated any such doctrine. On the contrary, in a number of cases, it has held that the presumption that the decedent acted with due care is not an evidentiary one and that it was reversible error for the trial court to have instructed the jury that it might consider the presumption or attribute evidentiary effect to it.[3]
 
 
 24
 These are the only Maryland cases to which we have been referred or which we have found which deal with the particular presumption with which we are here concerned. The two earliest cases in the series, the last of which was decided in 1883, would support the position of my brothers were it not for the fact that every subsequent case, the earliest of which was decided in 1884, attributes no such effect to the presumption that the decedent acted with due care.
 
 
 25
 In State, for Use of Chenoweth v. Baltimore Contracting Co., 177 Md. 1, 6 A.2d 625 (1939), the Court referred to that part of the opinion in Northern Cent. R. Co. v. State, for Use of Geis, 31 Md. 357, decided in 1869, which would attribute evidentiary effect to the presumption of due care.
 
 The Court in Chenoweth said:
 
 26
 'In Maryland Central R. Co. v. Neubeur, 62 Md. 391, 402, the court narrowed that general language (that of Northern Cent. R. Co. v. State for Use of Geis) by this statement: 'While it is natural, and as a general rule rational, to presume that a party acts from incentives of self-preservation, this presumption can only be indulged in the absence of proof to the contrary. To instruct the jury that they may, in considering the whole case 'infer the absence of fault on the part of the plaintiff, from the known disposition of persons to avoid injuries to themselves,' in the presence of testimony that tends strongly to show the existence of fault, is tantamount to instructing them that they may conclude as they please; that they may find upon presumption and put the evidence aside".
 
 
 27
 If it may be said that in some of the Maryland cases decided since 1883, there was no real dispute as to what the decedent did, it cannot be said that in all of those cases there was no underlying factual dispute calling for resolution before the trier-of-fact or the court exercised its judgment as to whether or not the decedent's conduct measured up to the standard of the ordinary prudent man. Thus in Western Maryland R. Co. v. Shirk, it was undisputed that the decedent, a drover, riding in the caboose of a freight train carrying a shipment of cattle, jumped from the caboose after some of the cars of the moving train had become derailed. It was very much in dispute as to whether he had been told to jump from the caboose by an employee of the railroad, in which event his jumping would have been justified, or whether he was told to jump by a fellow drover, in which event his otherwise negligent act would not have been authorized or justified. In those circumstances, if the presumption of due care is ever to have any evidentiary effect, the jury should have been allowed to consider it in resolving the factual issue, hotly in dispute, as to the source of the instruction upon which the decedent acted. When jumping without the railroad's command was negligent beyond question, as the court held, the presumption, if to be given evidentiary effect at any time under the kind of circumstances with which we deal, should have been considered by the jury in determining whether the admitted command came from the railroad or from a volunteer unassociated with the railroad. Maryland's Court of Appeals held, however, that an instruction permitting the jury to consider the presumption that the decedent acted with due care was reversible error.
 
 
 28
 The question of the office of the presumption arises in this case under the following circumstances. Witnesses for the plaintiff testified that her decedent was crossing a street in downtown Baltimore at an intersection and in a marked pedestrian crosswalk, with the invitation and the protection of an electric 'walk' signal, when he was struck by the bus. Witnesses for the defendant, however, testified that the decedent undertook to cross the street some distance from the intersection and the pedestrian crosswalk and without the invitation or protection of an electric signal. The evidence was sharply conflicting, but there was no dearth of it. Resolution by the jury of the factual question on the contributory negligence issue depended simply upon whether the jurors believed the one set of witnesses or the other. No presumption artificially endowed with evidentiary weight was needful or useful to them in resolving the simple issue of credibility which was presented to them.
 
 
 29
 The District Court, of course, instructed the jury that the defendant had the burden of proving by a preponderance of the evidence that the decedent was contributorily negligent. On this question of fact, the Court clearly and unequivocally placed the burden of persuasion upon the defendant. If the jury, under its instructions, was unable to decide the issue of credibility upon which its finding of the decedent's conduct depended, if its mind was in equipoise, it was required to find for the plaintiff. If, then, my brothers are correct that under the Maryland law the jury should have been allowed to consider as evidence the presumption of due care, then the office of the presumption was not merely to place upon the defense the burden of producing evidence sufficient to support a finding inconsistent with the presumed fact; it was not merely to place upon the defendant the burden of persuasion on the factual question underlying the contributory negligence issue; it is to require that the defendant carry the burden of persuasion by a measure of proof greater than a mere preponderance of the evidence. How much greater the burden placed upon the defense to prove its contention beyond a preponderance of evidence, the majority does not specify, but it would invite them to apply a standard of proof akin to that applicable in criminal cases, that they must be persuaded beyond all reasonable doubt, for jurors are not unaware of the existence of that standard.
 
 
 30
 Having in mind the circumstances in which the question now arises and the practical effect of the instruction which my brothers now require, it is appropriate to turn to Grier v. Rosenberg[4] upon which my brothers' hats are hung.
 
 
 31
 In Grier, a passenger on a bus was injured when the bus suddenly stopped. There was testimony that the abrupt braking of the bus was caused by the action of the driver of an autmobile which cut sharply in front of the bus. Witnesses at the scene noted the color and make of the automobile and its license number. The automobile did not stop, but the proof showed that registered to the defendant, Rosenberg, was an automobile having the license number noted by the witnesses and fitting their description of its make and color. The proof thus established the basic facts out of which arose a presumption that Rosenberg's automobile was being driven at the time by him, or by his authorized servant. Rosenberg testified that he was not in the vicinity at that time and that, while some of his employees on some occasions used his automobile with his authorization and on his business, no one of them had any recollection of having been in the vicinity of the accident at the time of its occurrence.
 
 
 32
 In this state of the proof, the plaintiff, in Grier, asked that the jury be instructed that proof that Rosenberg was the owner of the offending vehicle gave rise to a presumption that it was being driven at the time by him or by his authorized employee engaged in his business. The trial court refused to give the requested instruction and submitted the case to the jury under instructions which required them to find the facts in accordance with the preponderance of the evidence. The only direct evidence in the case was inconsistent with the presumed fact, so the Court's instruction that the jury should find the facts in accordance with the preponderance of the evidence, without reference to any permissible inference that might arise out of evidence of Rosenberg's ownership of the vehicle, required the jury to find for Rosenberg. It was tantamount to a mandatory instruction, unless the jury, on its own and without guidance by the judge, should perceive and understand the logical relation between the basic evidentiary facts proven by the plaintiff and the ultimate presumed fact, and that is an unlikely assumption. See McCormick on Evidence 316.
 
 
 33
 Maryland's Court of Appeals held in Grier that the jury should have been instructed that a presumption that Rosenberg, or one of his authorized employees, was driving the car arose out of proof of his ownership of it which they might consider along with the defendant's testimony indicating that it was not.
 
 
 34
 In Grier, of course, unlike the present case, there was a dearth of proof. Beyond proof of the basic fact of Rosenberg's ownership of the offending vehicle, the plaintiff had no source of reliable information. The ultimate fact was peculiarly within the knowledge of her adversary, and the kind of general disclaimer he entered was not susceptible to direct contradiction. There was thus a compelling need for some instruction to inform the jury that it need not accept Rosenberg's self-serving testimony as conclusive of the plaintiff's rights.
 
 
 35
 The two presumptions are in sharp contrast. That with which the court was concerned in Grier arose out of proof of basic, evidentiary facts which were logically related to it. In the absence of some instruction, there was grave danger that the jury would not appreciate the evidentiary value of the basic, proven facts. The presumption of due care, however, is not dependent upon proof of any basic fact or facts. There is in this case no circumstantial evidence, the utility of which might go unnoticed by the jury in the absence of some instruction which would draw their attention to it.
 
 
 36
 Grier's formulation may be offensive to Thayerian purists, but clearly the circumstances there called for some instruction which would inform the jurors that they were not bound to accept Rosenberg's self-serving testimony. The jury could have been told that a permissible inference that Rosenberg, or his authorized servant, was driving the offending automobile might be drawn from proof of his ownership of it, and that it was for the jury to determine, after consideration of Rosenberg's denials, whether or not his automobile at the time was being driven by him or one of his employees engaged in Rosenberg's business. An instruction in terms of the presumption would have no other practical effect.
 
 
 37
 Thus in Grier, reference to the presumption of the identity and authority of the driver arising out of proof of ownership of the vehicle did not place upon Rosenberg a greater burden of persuasion than proof by a preponderance of the evidence. Indeed, an instruction having the effect of the one required by Maryland's Court of Appeals was necessary if Rosenberg's self-serving testimony was not to foreclose the jury's consideration of the factual issue.
 
 
 38
 Grier thus dealt with a significantly different presumption, with a significantly different base, under starkly dissimilar circumstances and with totally different consequences in its effect upon the jury's consideration of the factual issues.
 
 
 39
 That a court holds under certain circumstances that a jury should be informed of the existence of a particular presumption, is far from persuasive authority that a different presumption having a wholly different relationship to the basic fact out of which it arises should be mentioned to a jury under different circumstances and with wholly different consequences. Indeed, it is trite now to repeat what everyone addressing himself to the subject has said that so much of the confusion over presumptions springs from failure to distinguish between different presumptions and the different situations out of which the problems regarding their use arise.
 
 
 40
 The occasion seems inappropriate for entry upon the controversy over the relative merits of any particular theory about the employment of presumptions and their offices. Since my brothers read Grier as taking Maryland out of the main stream of the prevailing current of thought, I may briefly refer to those authorities which my brothers adroitly, but it seems to me inexactly, align on one side or the other, for I can give Grier no such reading.
 
 
 41
 Thayer thought that presumptions of the sort with which the Maryland Court was concerned in Grier should have no other office than to shift the burden of producing enough evidence to support a finding inconsistent with the fact sought to be presumed. When such evidence comes into the case, the presumption disappears. This is the theory adopted by the American Law Institute's Model Code of Evidence in Rule 704.
 
 
 42
 Professor Edmund Morgan, when he first began to write about presumptions, expounded a complicated theory which would attribute to some presumptions a larger effect, but he, himself, withdrew from that suggestion long before he began to work as Reporter for the American Law Institute in the formulation of the Model Code of Evidence. When he approached that task, he was firmly of the view that such a presumption should not only shift the burden of production of evidence but should fix the ultimate burden of persuasion. He thought it should have no other office. That was the view which he and the majority of the advisers originally suggested when the Model Code of Evidence was being drafted. This he makes clear in his introduction to the Model Code of Evidence, particularly at page 57. Professor Morgan's pre-Model Code of Evidence views, and to which he still apparently adheres, therefore, lend no support to the rule which my brothers attribute to Maryland. As we have indicated, the Court in this case clearly placed the burden of persuasion upon the defendant, which is all that Professor Morgan would require. Even his earliest writings ascribed no such undefined and unbounded evidentiary effect to presumptions as the majority would attribute to this one.
 
 
 43
 Wigmore, in general, supports the Thayerian view, but he clearly recognizes that there are times and circumstances calling for mention to a jury of a presumption, though he would not have that word employed by the court. In the circumstances of Grier v. Rosenberg, Wigmore advocates an instruction to the jury that it is bound by no rule of law in deciding the issue, but it may give special weight, in its discretion, to the fact that in the course of experience automobiles not shown to have been stolen are usually driven by their owners or their authorized servants. This is plainly stated in P21 under Remedies in 2498a.[5]
 
 
 44
 I find in McCormick on Evidence nothing which lends support to what the majority does here. In 316 and 317, to which the majority opinion refers, Professor McCormick is principally concerned with the preservation of the practical utility of circumstantial evidence in the face of inconsistent evidence, however incredible, going directly to the ultimate fact and the mechanics of telling the jury how to resolve the issue when the basic facts upon which the presumption rests are in dispute. In the first mentioned aspect of the problem he is dealing with the Grier v. Rosenberg situation. This is made abundantly clear in the ultimate paragraph of 316 and the numerous examples that he uses, such as evidence of mailing in the face of the addressee's denial of receipt of the letter.[6] He would approve Grier v. Rosenberg and would not be so inclined as Wigmore to quibble with the judge's use of the word 'presumption.' He recognizes, however, his kinship here with Wigmore[7] and joins Morgan in advocating placing the burden of persuasion upon the opponent of the presumption. McCormick recognizes, however, that a presumption is not evidence,[8] and the burden of persuasion he would have the opponent of the presumption shoulder is that of a preponderance of the evidence. McCormick may be searched in vain for any hint that a presumption may be used to place a heavier, undefined burden of persuasion on the presumption's opponent, or that a presumption having no evidentiary basis may be given evidentiary value.
 
 
 45
 I confess agreement with Professors Wigmore and McCormick. When there is a logical relation between the basic facts which are proven and the ultimate fact to be inferred or presumed, the evidentiary value of the basic facts is not to be dissipated simply because the adverse party presents some evidence, however incredible, in direct contradiction of the ultimate fact to be inferred or presumed. To preserve the evidentiary value of the basic facts proven as tending to prove the logically related ultimate fact, some instruction to the jury is required. This I take it Professor Morgan, too, would sanction, and I am not certain that the Model Code of Evidence would necessarily disapprove it, for it deals strictly with the effect of presumptions without reference to inferences which may reasonably be drawn from proven facts. What the Maryland Court of Appeals did in Grier v. Rosenberg, and all that it did, was to leave in the case a permissible inference inconsistent with the defendant's weak, self-serving denial of the ultimate fact. If, in the courts of a state whose trial judges are not allowed to comment upon the evidence, this must be done in terms of a presumption rather than in terms of a permissible inference, the effect is the same.
 
 
 46
 Far from being a departure from the current course of thought about presumptions, Grier v. Rosenberg is a specific application of the affirmatively expressed teachings of Wigmore. That decision is no premise for a conclusion that it is a rejection of what it embraces. What my brothers do is certainly a rejection of Wigmore's theory,[9] as they recognize, but Grier v. Rosenberg, the platform upon which they stand, was not.
 
 
 47
 The majority opinion places reliance upon the statement by Judge R. Dorsey Watkins in Jennings v. United States, D.Md., 178 F.Supp. 516, which indicates that he attributed some evidentiary weight to a presumption that a decedent had acted with due care in finding the facts underlying the contributory negligence issue tried to the court without a jury. Judge Watkins is an able and learned judge with a broad background as a Maryland lawyer, though in Jennings the specific question apparently was not developed in argument before him or discussed by him. Judge Winter, another able jurist with a background as a Maryland lawyer, heard the arguments of counsel in this very case and concluded that Maryland law did not sanction evidentiary use of this presumption in these circumstances, while Chief Judge Sobeloff, for whose great ability and deep understanding of Maryland law I have the greatest respect, disagrees. It seems to me, however, that we are not to decide the question of Maryland law by counting the noses of federal judges with Maryland backgrounds who have expressed or intimated a view or an assumption upon one side or another. We must not depend upon secondary sources, and the only primary sources we have are the opinions of the Maryland Court of Appeals. It is there that we must find the answer, and I find nothing there which supports the views of my brothers. Grier v. Rosenberg is so far afield from Western Maryland R. Co. v. State, to Use of Shirk and other Maryland cases dealing with the presumption of due care in circumstances comparable to those in this case, that I can find no rational basis for a suggestion it overruled them sub silentio or that it furnishes any guidance whatever to the Maryland court's approach to a case like this one.
 
 
 48
 Finally, it may be observed that in Maryland the presumption that the decedent acted with due care for his own self-protection is no stronger and stands on no higher basis than the presumption that the driver of the bus that killed him acted with due care for the safety of pedestrians and others using the streets. Indeed, Maryland's Court of Appeals has spoken of the two presumptions in the same breath.[10] If, therefore, upon a new trial, the District Court is to be required to inform the jury of the one and permit it to weigh it as evidence, surely it must inform the jury of the other and permit it to weigh that one as evidence, too. The result will be a radical distortion and perversion of the burden of persuasion, but if the burden of persuasion resting on the defendant on the contributory negligence question is to be enlarged to confusing proportions, it cannot logically or fairly be said that the burden of persuasion resting upon the plaintiff as to the primary negligence question is not similarly enlarged to undefined proportions by the identical presumption of due care.
 
 
 49
 I do not understand that evidentiary use in Maryland of the presumption of due care by plaintiff or defendant is dependent upon the actor's availability as a witness. It is true that Geis[11] and Hauer,[12] the two ancient Maryland cases holding that the jury should be told of the presumption and instructed that they might give evidentiary weight to it, were wrongful death actions, and the question was that of the care of the plaintiff's decedent. Of the five subsequent cases,[13] rejecting the doctrine of Geis and Hauer, however, three, Neubeur. Stebbing and Smith, were personal injury actions, and two, Shirk and Chenoweth, were actions for wrongful death. In the first of those five cases, Neubeur, the doctrine of Geis and Hauer was broadly rejected as erroneous, and the court undertook no distinction of them on the ground that the plaintiff, Neubeur, was alive and able to testify in his own behalf. The rejection of Geis and Hauer was carried forward in Shirk, a wrongful death action, and mention of the presumption held inappropriate despite the decedent's unavailability as a witness.
 
 
 50
 I thus do not understand that Maryland has held, or even suggested, that the presumption of due care is to be given evidentiary effect if the actor is dead, but not if alive. Though, here, the plaintiff's decedent is unavailable as a witness while the defendant's bus driver presumably is available, I do not think those circumstances warrant disparate treatment of the concomitant presumptions.
 
 
 51
 Unconvinced that Maryland's Court of Appeals would apply to the presumption of due care the undefined evidentiary weight attributed to it by my brothers, I respectfully dissent.
 
 
 
 [1]
 Northern Cent. R. Co. v. State, for Use of Geis, 31 Md. 357, 364 (1869)
 
 
 [2]
 Baltimore & O.R. Co. v. State, for Use of Hauer, 60 Md. 449 (1883)
 
 
 [3]
 Maryland Central R. Co. v. Neubeur, 62 Md. 391, 401-402 (1884); Philadelphia W. & B.R.R. Co. v. Stebbing, 62 Md. 504 (1884); Western Maryland R. Co. v. State, to Use of Shirk, 95 Md. 637, 53 A. 969 (1902); and see Central Ry. Co. v. Smith, 74 Md. 212, 21 A. 706 (1891); State, for Use of Chenoweth v. Baltimore Contracting Co., 177 Md. 1, 6 A.2d 625 (1939)
 
 
 [4]
 213 Md. 248, 131 A.2d 737 (1957)
 
 
 [5]
 IX Wigmore on Evidence, 3d ed., pages 340-341. See, also, P41 on page 343 and the illuminating comments of others on pages 348-350
 
 
 [6]
 See also 311
 
 
 [7]
 See 317 fn. 8
 
 
 [8]
 See 317 fn. 3
 
 
 [9]
 The presumption of due care, as we have noted, is not dependent upon proof of any basic fact or facts. If it be given no substantive, evidentiary value, it leaves no base of proven facts from which an inference of due care might conceivably be drawn. The presumption is wholly unlike those which Wigmore and McCormick think require some instruction to the jury in some situations, and the difference is critical. We have here no problem of preservation of the practical utility of circumstantial evidence; the jury was here called upon only to resolve, on conflicting, direct evidence, a simple question of credibility
 
 
 [10]
 P.W. & B.R.R. Co. v. Stebbing, 62 Md. 504 (1884); State, for Use of Chenoweth v. Baltimore Contracting Co., 177 Md. 1, 6 A.2d 625 (1939)
 
 
 [11]
 Northern Cent. R. Co. v. State, for Use of Geis, 31 Md. 357 (1869)
 
 
 [12]
 B. & O.R. Co. v. State, for Use of Hauer, 60 Md. 449 (1883)
 
 
 [13]
 Maryland Central R. Co. v. Neubeur, 62 Md. 391, (1884); Philadelphia W. & B.R.R. Co. v. Stebbing, 62 Md. 504 (1884); Western Maryland R. Co. v. State, to Use of Shirk, 95 Md. 637, 53 A. 969 (1902); and see Central Ry. Co. v. Smith, 74 Md. 212, 21 A. 706 (1891); State, for Use of Chenoweth v. Baltimore Contracting Co., 117 Md. 1, 6 A.2d 625 (1939)