GRESHAM, Adm'x of the Estate of Lester Gresham,
ET AL. *v.* COMMISSIONER OF
MOTOR VEHICLES

[No. 142, September Term, 1969.]

*Decided January 16, 1970.*

The cause was argued before HAMMOND, C. J., and Mc-WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Herbert J. Hirsch* for appellants.

*William R. Hymes,* with whom were *Charles S. Keyes* and *Hymes, Keyes & Simmons* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

On December 19, 1967, Lester Gresham left his home on East Lanvale Street in Baltimore City at about 5:15 A.M. and began walking to his place of employment. He was proceeding south on Broadway. While crossing from the northeast corner of Broadway and Orleans to the southeast corner of Broadway and Orleans he was struck by a car traveling west on Orleans. This impact flipped him into the air and he was immediately run over by a

second car. Neither of the drivers of these vehicles stopped to render aid and neither was apprehended. The investigating police officer testified as to the absence of any physical marks other than a blood spot near or at the point of impact. Mr. Gresham was dead on arrival at the hospital. The plaintiff-appellant, Mrs. Gresham, after giving notice to the Unsatisfied Claim and Judgment Fund Board, defendant-appellee, filed suit. At the trial the testimony showed the weather was wet and cloudy and the victim was somewhere in the area of the 16 foot wide crosswalk when hit, if not within the crosswalk, as his body and a patch of blood were found in the crosswalk. The spot where the blood was found was 66 feet into the intersection from the curb line from where Mr. Gresham would have started across the intersection proceeding toward his place of employment, Orleans Street being 88 feet in width. The intersection was controlled by a traffic signal which had a "walk" light but there was no evidence as to the color of the light at the time of impact or when Mr. Gresham started to cross the intersection. Nor was there any evidence as to the synchronization of the lights at this intersection with those of other intersections on Orleans Street. The intersection was well illuminated, there being at each corner two mercury vapor lamps affixed to arms extending from high poles.

The plaintiff's chief witness, Sylvester Green, testified his car was in the curb lane while stopped at a red signal at Orleans and Wolfe, which is two blocks from Orleans and Broadway, the scene of the accident. While there he noticed the light at Orleans and Broadway was green for Orleans Street traffic. He did not thereafter notice the light at Broadway and Orleans. However, while stopped for the red light at Orleans and Wolfe, a young man spoke to him from across another car and asked him the directions to Fort Meade, which Green gave to him. When the light turned green, the witness stated that:

"Then, all three of us take off towards Broad-

way. The two cars to my left speeded off in a
hasty reaction. So, they got approximately a
half a block, maybe, ahead of me by the time
we got to the intersection of Broadway. But, be-
fore I got there is when I saw the man get hit."
[Witness Green elsewhere in his testimony esti-
mated he was about 150 feet away from the in-
tersection when he saw the victim thrown into
the air by the impact. The two cars which had
been to the left of Green at the Orleans and
Wolfe Street intersection were the cars that
struck the decedent.]

Q. Was he in the crosswalk or wasn't he?

A. Yes, he was.

Q. And which car hit him?

A. The car that was traveling fast. I don't
know what make or what kind it was."

At the conclusion of the testimony, the defendant
moved for a directed verdict contending that there was
no evidence of primary negligence on the part of the two
drivers. The trial judge granted the motion on the basis
that there was no evidence from which the jury could
conclude what color the light was at the time of the acci-
dent. He felt that without the plaintiff introducing evi-
dence to show the light was favorable for the victim when
he started to cross, then the plaintiff had not made out
an essential element of her case. It is from the directed
verdict that the plaintiff appeals.

The lower court in its setting forth of the reasons why
it granted the defendant's motion for a directed verdict
at the conclusion of the plaintiff's case, recognized the
presumption that exists in favor of a plaintiff that at
the time of an accident he is deemed to have been exer-
cising ordinary care for his own safety, in accordance
with the natural instinct of human beings to guard
against danger. However, in synthesizing the plaintiff's
case the court failed to properly apply the presumption in
favor of the deceased. The court stated: "The inference

is that he exercised ordinary care for his own safety but does that inference go so far as to say that it must be inferred that every pedestrian who starts to cross does so on a green light?" The court then answered its own query adding: "If it does not go that far, how can I submit the case to the jury unless they are going to speculate on that crucial issue?" We are of the opinion that this is where the lower court erred. In the instant case there being no countervailing evidence to undermine the presumption, the presumption that the deceased started to cross the street with a favorable light and was in the crosswalk when struck should have prevailed.[1] We will discuss our reasons in support of this premise very shortly; however, we think it important first to distinguish the case at bar from the cases relied upon by the lower court, namely, *Hickory Transfer Company v. Nezbed,* 202 Md. 253, 96 A. 2d 241 (1953); *Love v. State, Use of Nelson,* 217 Md. 290, 142 A. 2d 590 (1958); and *Thompson v. Sun Cab Company,* 170 Md. 299, 184 A. 576 (1936).

In *Nezbed* the plaintiff through his own witnesses, although relying on the doctrine *res ipsa loquitur,* proceeded to explain away the inference of negligence on the part of the defendants, showing that there was a malfunctioning traffic light and that one of the defendant's brakes failed. Chief Judge Sobeloff, writing for the Court, tersely summed it up:

> "In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur;* and, having undertaken to prove the details, they failed to show negligence on the part of the defendant. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little." *Id.* at 263.

---

1. For the respective rights of a pedestrian and the operator of a motor vehicle at intersections controlled by traffic signal see Maryland Code (1967 Repl. Vol.) Art. 66½; § 193 (a) (2); § 193 (b) (2); § 193 (c) (2); 193 (d) (2); and § 193 (g).

Certainly, in the case at bar, the showing by the plaintiff of the presence of a traffic light and crosswalk at the intersection where the accident occurred cannot be equated with *Nezbed* where the plaintiff showed the traffic light to be faulty and further failed to prove any negligence on the part of the defendant. In fact, in *Nezbed* the plaintiffs were in their home and were injured when the truck, after its original collision with another vehicle, struck their house. There was no question concerning the extent, if any, to which they might benefit from evidentiary presumptions. Furthermore, in the case at bar the plaintiff, rather than explaining away the defendant's negligence, as in *Nezbed*, affirmatively presented facts from which the jury could have found negligence on the part of the defendant.

In *Love v. State, supra,* there was affirmative testimony from the operator of the vehicle that struck the decedent that the victim was outside of the crosswalk at the intersection at the time of impact. Again, in the case at bar there is a total absence of any evidence in the record showing the decedent guilty of contributory negligence.

In *Thompson, supra,* wherein at the conclusion of the plaintiff's case, the court gave a directed verdict for the defendant, the plaintiff was not only alive to testify but was vague and uncertain in his testimony concerning vital elements of the case, which prompted this Court to state:

> "* * * It has so happened in the appeal at bar that, in his attempt to prove negligence, the plaintiff has proved the facts which would establish contributory negligence. In such a state of the plaintiff's testimony, he must not only show affirmatively the negligence of the defendant, but some facts to answer implications of negligence on his own part that have also arisen from his evidence." *Id.* at 308.

Again, in the instant case there was no evidence of con-

tributory negligence on the part of the plaintiff and in the absence of any evidence to the contrary, the plaintiff, in our opinion, was entitled to the presumption that he was exercising due care.

Actually, in the case at bar there was sufficient evidence introduced to pose a question for the jury concerning whether the decedent was struck within the crosswalk, so that the only element, although a vital one, of the plaintiff's case which is aided by the presumption is the question of the color phase of the traffic light. The lower court's reluctance to carry the presumption that far was grounded primarily on its reliance upon the rationale of the dissenting opinion by Judge Haynsworth in *State, Use of Geils v. Baltimore Transit Company,* 329 F. 2d 738 (4th Cir. 1964), wherein the learned judge took issue with the opinion of the Court which held that the presumption that a deceased plaintiff exercised due care for his own safety prevailed in Maryland. We think *State, Use of Geils,* to be of sufficient importance, in relation to the instant case, to warrant further attention. In discussing the case we wish to make it clear that we think the position we take, regarding the application of the presumption of due care in the instant case, is reconcilable with both the majority, as well as the dissenting opinion. We say this because in *State, Use of Geils* there was some countervailing evidence which eroded the validity of the presumption, whereas in the instant case there is an absence of countervailing evidence.

In *State, Use of Geils,* the plaintiff requested the Court to instruct the jury that they might consider, in connection with other evidence, the presumption of due care on the part of the decedent who had been struck by a bus at a street corner. However, the court instead instructed the jury that although ordinarily such a presumption existed in favor of the plaintiff that in the case then before the court, the decedent having failed to exercise ordinary care in a number of respects, the jury should, "consider the proof which has been offered and determine whether

you are persuaded by a preponderance of the evidence that he failed to exercise ordinary care, and you are not to rely upon the presumption." Upon appeal Judge Bell, writing for the Court, held that the presumption of due care on the part of the deceased plaintiff prevailed in Maryland, relying on this Court's opinion in *Grier v. Rosenberg*, 213 Md. 248, 131 A. 2d 737 (1957). Although the presumption involved in *Grier* was one concerning agency arising from the ownership of a motor vehicle, Judge Bell thought it apposite to the principle underpinning the use of presumptions, stating:

> "* * * Judge Prescott, speaking for the Maryland Court, explicitly pointed out that the precedents in that State recognized no basis for any distinction between the presumption that the decedent exercised due care for his self-preservation and the presumption of agency arising from the fact of ownership. And this observation of Judge Prescott is immediately followed by the very sensible question, '[I]ndeed, if the instruction be not granted, how is the jury to know of this presumption?'"

Elsewhere, the opinion in *State, Use of Geils,* reads:

> "* * * The presumption with which we are concerned in this case may be invoked only where the injured person is unavailable because of the injury suffered or because of death. Such incapacity is the just reason for the presumption;
> * * *"

Indeed, in reversing the lower court, the Court in *State, Use of Geils* pointed out that, "In a careful review of the Maryland decisions and authorities in the field of Evidence, Judge Prescott said that the presumption prevails and the jury should have been so instructed *despite the fact that countervailing evidence was adduced upon the disputed presumption.*" (Emphasis supplied.) We

agree with the majority opinion in *Geils,* wherein the Court holds that the presumption exists in Maryland, and again point out that the instant case presents a more compelling reason for recognizing the presumption because of the absence of countervailing evidence.

We would also note that the Maryland cases cited by Judge Haynsworth in his dissent, the latest of which is *State, Use of Chenoweth v. Baltimore Contracting Co.,* 177 Md. 1, 6 A. 2d 625 (1939), all hold that the presumption fails only where there is countervailing evidence, an element lacking in the case at bar. It would also appear that his opinion ignores the later case of *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 434, 71 A. 2d 442 (1950), and the cases cited therein which affirmed the existence of the presumption. Nor did the lower court in the case at bar have the benefit of our decision in *Nizer v. Phelps,* 252 Md. 185, 205, 249 A. 2d 112 (1969), wherein Judge Barnes writing for the Court recognized the existence of the presumption, stating:

> "In regard to contributory negligence, Mrs. Phelps, because of her mental condition resulting from the injuries suffered, was not able to testify in the case. Under the law of Maryland she was entitled to the presumption that she exercised ordinary care for her own safety. *Baltimore Transit Co. v. State,* 194 Md. 421, 434, 71 A. 2d 442, 447 (1950); and prior Maryland cases cited in the opinion in that case. See also *Jennings v. U. S.,* 178 F. Supp. 516, 526, 529 (D. Md. 1959)."

We have spent some time in this opinion discussing the presumption existing in favor of a deceased plaintiff's exercising of due care because of the unique position that the presumption plays in this case where the victim, as well as the operators of the vehicles who struck him, were all unavailable as witnesses. It was against this background that the lower court found a lack of primary negligence on the premise that since the

plaintiff had introduced evidence that the intersection was controlled by a traffic light, then in order to prove negligence on the part of the defendant, the plaintiff had to show that the vehicles which struck the decedent went through the red light at the intersection. The court further reasoned that in order to establish this, the defendant had to prove that the decedent crossed the intersection on a green or "walk" light. It is an accepted fact that if the decedent was favored with a green or "walk" light, conversely, the operators of the vehicles which struck him would have been confronted with a red signal. However, in the absence of the plaintiff having submitted evidence from which the color of the light may have been deduced as in *Nezbed, supra,* and in view of her having affirmatively introduced evidence from which the jury could have reasonably found that the operators of the vehicles entered the intersection at an excessive speed or with inattention to their driving, we think the burden of proving the color of the light was on the defendant by way of exculpation. Accordingly, in the presentation of her own case, in the absence of evidence to the contrary, she was favored with the presumption of due care. To hold that the presumption does not go at least this far is to run counter to what this Court said in *Grier v. Rosenberg, supra,* regarding the effect of presumptions and what the Court said in *State, Use of Geils, supra,* regarding the presumption of due care, and certainly, counter to Judge Alvey's statement for this Court many years ago in *B. & O. R.R. v. State, Use of Hauer,* 60 Md. 449 (1883), that, "[T]he want of ordinary care on the part of the party injured is a matter of defense and the onus of proof of the fact is upon the defendant." *Id.* at 462, 463.

We now turn to an examination of the question of primary negligence on the part of the defendant. As was stated in *Thompson v. Sun Cab Company, supra,* "The mere happening of the accident gave rise to no presumption of negligence on the part of the driver * * *." *Id.* at 306. In the instant case, however, we think there was testimony, which if believed by the jury, could have sup-

ported a finding of negligence on the part of the operators of the vehicles who struck the decedent and thereafter fled from the scene of the accident. .

The chief witness for the plaintiff, and the only eyewitness, Mr. Green, stated that when the traffic light turned green at the intersection at Wolfe and Orleans, two blocks from the intersection where the accident occurred, the two cars on his left, the ones which struck the decedent, "speeded off in a hasty reaction." He further testified that, "They got approximately a half a block, maybe, ahead of me by the time we got to the intersection of Broadway." Elsewhere in his testimony he states that he saw the body of the decedent flying up in in the air when he was still 150 feet from the intersection. Furthermore, there was no evidence of any physical marks, such as skid marks at or near the crosswalk where the impact occurred, which gives rise to the reasonable inference that no attempt was made to stop either vehicle which struck the deceased. The fact that the deceased was flipped up in the air, the witness Green stating that "he went up in the air like a balloon," would indicate that he was struck with considerable force. We think that from this testimony there was evidence which should have carried the question of negligence to the jury.

It is true that in *Jones v. Baltimore Transit Company,* 211 Md. 423, 127 A. 2d 649 (1956), Judge Hammond (now Chief Judge), commenting on the testimony as to speed given by a woman passenger on a bus who was injured when she was thrown forward by the sudden stopping of the bus, stated for the Court:

> "* * * The concept of speed is a relative one. Negligence may not be inferred from general adjectival descriptions alone."
>
> * * *
>
> "* * * Such an inference must be drawn from facts, not from adjectives or other words used by witnesses to characterize the movement, e.g.

in the instant case, 'terrific jolt', 'very terrible-very severe jerk or jolt', 'unusually hard jerk.' See also for reference to the weakness of adjectival generalizations as the basis for the inference of negligence, a discussion of the cases in *Baltimore Transit Co. v. Sun Cab Co.*, 210 Md. 555, 560." *Id.* at 429.

In contrast with *Jones,* in the instant case there is more than mere adjectival description. Here we have a measured distance, in that we are talking about the two blocks before the intersection. We also have evidence of acceleration on the part of the operators of the cars which struck the decedent in that they gained half of a block on the car driven by Green, within a two block distance, while approaching the intersection. In this context we think the descriptive terms "speed" and "traveling fast," as used by the witness Green have more than an abstract or adjectival connotation.

To be sure we do not know the speed at which Green's car was traveling so that a more precise comparison cannot be made. However, the fact that the other two cars were leaving him behind and that at the intersection they struck the decedent with such force as to propel him into the air "like a balloon" presented evidence, we think, from which a jury may have properly found that they were being operated at an excessive speed and without proper attention, considering that they were entering an intersection.

This Court on many occasions has expressed the duty incumbent upon a motorist to approach an intersection with attention and alertness for the presence of pedestrians, even when favored with a green phase traffic signal, and there is no evidence in this case that the operators of the vehicles which struck the decedent were so favored.

In *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127 (1950), our predecessors held:

"A motorist when approaching a street inter-

section must exercise much greater vigilance than when he is driving between intersections. We emphasize that the duty which the driver of a motor vehicle owes to pedestrians at street crossings is one that should be deeply impressed on them. The prohibition against fast and reckless driving is not the only requirement placed upon drivers at street crossings, there are other precautions that must be taken by them. It is the duty of a driver at a crossing to look carefully ahead and to keep the car in such control and its speed so reduced as to avoid injury to pedestrians if reasonably possible and also to warn them whenever necessary, by proper signal of his approach." *Id.* at 471.

\* \* \*

"\* \* \* But a green light does not give a driver the right to drive recklessly through an intersection regardless of traffic conditions and to abandon all care for the safety of pedestrians on the crosswalk. A motorist, when given the green light or any other signal to proceed, must exercise reasonable care and caution to avoid running into any persons who have not been able to get completely across the street. If a motorist enters an intersection recklessly without looking out for traffic in the intersection, he is guilty of negligence, even though he has the green light or other signal to proceed. *Valench v. Belle Isle Cab Co.*, 196 Md. 118, 123, 75 A. 2d 97, 99." *Id.* at 472.

See also *Baltimore Transit Company v. Putnam*, 250 Md. 19, 23, 241 A. 2d 586 (1968).

In holding that the court below erred in granting the directed verdict for the defendant, we find it unnecessary to pass upon the contention urged upon us by the appellant, that the flight from the scene of the accident by the unidentified operators of the motor vehicles which struck the decedent and their failure to stop and render assis-

tance, supports the inference of consciousness of guilt on their part and was thus evidence of negligence. It is true that it is difficult to rationalize the motives which would prompt such action without associating it with guilt. However, it is possible that both drivers simply panicked, or were driving on expired licenses, or were uninsured, or were guilty of unauthorized use, or were prompted to leave because of a myriad of unsavory reasons which may not have had any connection with a sense of guilt because of negligent operation. We have not been able to find any authority among the Maryland decisions for the application of such an inference or presumption in civil actions.

It is true that in the area of criminal law we have said:

> "* * * [F]light from the scene of a collision without any effort to ascertain the extent of the injuries caused by his act or to aid the injured person may be taken into consideration as evidence of guilt." *Clay v. State,* 211 Md. 577, 585, 128 A. 2d 634 (1957).

And the Court of Special Appeals adopted this proposition in *Anderson v. State,* 3 Md. App. 362, 370, 239 A. 2d 579 (1968), and *Montague v. State,* 3 Md. App. 66, 71, 237 A. 2d 816 (1968). Nonetheless, in regard to civil actions, wherein causation is the key, we have said:

> "* * * The highly culpable conduct of the defendant in driving on without apparently stopping or even slowing down after he knew that he had struck a man does not alter the place of collision." *Love v. State, supra,* at 295.

However, without giving play to any inference derived from flight, we are of the opinion that the learned trial judge erred in directing the verdict for the defendant and that the case should be remanded for a new trial.

*Judgment reversed and case remanded for new trial; appellee to pay costs.*