HICKORY TRANSFER COMPANY, INC. ET AL. *v.*
NEZBED ET AL.
[No. 124, October Term, 1952.]

*Decided April 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. Hamilton Whiteford*, with whom was *Wesley E. McDonald* on the brief, for the appellants.

*Douglas N. Sharretts*, with whom were *Harry W. Allers* and *George Werner* on the brief, for the appellees.

SOBELOFF, C. J., delivered the opinion of the Court.

Louis Nezbed and his wife, appellees here, were awakened in the early morning of March 17, 1951, by a 19000-pound tractor-trailer crashing violently into their house at the southeast corner of Orleans Street and Milton Avenue in Baltimore City. The vehicle caught fire, spreading flames to the house; the appellees were both injured, Mr. Nezbed seriously; the house and the household effects were heavily damaged; and the plumbing supply store which Mr. Nezbed conducted below the living quarters was demolished.

The tractor-trailer of Hickory Transfer Company, driven by its chauffeur, Lloyd DeWitt Shank, had just collided with an automobile which belonged to Mrs. Bessie V. Herberson and was operated by Gideon G. Baugher, Jr. An unusual feature of the case is a mechanically defective traffic signal. As Baugher proceeded south on Milton Avenue, approaching Orleans Street, he had a green light upon which he relied as entitling him to enter the intersection. At the same time the tractor-trailer was proceeding east on Orleans Street toward Milton Avenue. Unknown to the operators of both vehicles, one side of the traffic light which overhung the intersection was out of order, so that while it showed red for traffic proceeding west on Orleans Street and would normally also show red for traffic going east, it was in fact dark for eastbound traffic. The chauffeur of the tractor-trailer, being on a boulevard highway and

seeing no traffic light there, relied on the right of way to which, under the circumstances, he felt entitled. The two vehicles collided and the tractor-trailer was propelled, it was agreed, a distance of fifty-four feet into the Nezbed property.

At the trial a directed verdict was entered in favor of Herberson; and the jury found in favor of Baugher. There is no appeal against either of them. The jury also found a verdict against Hickory Transfer and Shank, and from the judgment thereon they appealed.

Two questions were argued here:

(1) Was there sufficient evidence of negligence against the appellants Hickory and Shank justifying the Court in submitting the case to the jury as to them and refusing later, after verdict, to grant their *motion n.o.v.?*

(2) Were certain statements allegedly made by Shank to a police officer and to Baugher, after the accident, properly admitted in evidence against the appellants or either of them?

To present these questions in their proper context it is necessary to recite the testimony in some detail. The plaintiffs called as their witness Officer Walter G. Schaefer, one of two policemen who responded in a radio car within a few minutes after the crash. The officer made notes as he spoke with Shank. According to Schaefer, Shank showed no awareness of the faulty operation of the light but thought the signal was turned off when he entered the intersection. As he did so, Schaefer testified that Shank told him, he noticed the headlights of the car approaching from his left. Plaintiff's counsel interrogated the officer:

"Q. What did he [Shank] say, if anything, about his brakes?

A. If I remember correctly he said as he applied his brakes he swerved to his right, that he struck a vehicle, and then his brakes mushed."

When the officer read his notes, however, a somewhat different version emerged. These, not signed by Shank, attributed this statement to him: "I cut to my right

and then my brakes mushed and then it gave way completely, I also recall hearing the air released, as it was then I struck this car."

It will be noted that of the officer's two versions of Shank's statement, the memorandum is potentially the more damaging to the defendants; for while the officer did testifiy from unaided memory that Shank told him he first struck the Baugher car and then his brakes "mushed", the memorandum has it that the brakes "mushed" and gave way completely, and *then* he struck the car. The first version suggests the possibility that the collision itself may account for the behavior of the brakes; the second indicates that the difficulty with the brakes occurred *before* the collision.

Appellants' counsel did not object on behalf of Shank to the admission of the officer's oral version of Shank's statement; but as to Hickory he did object. While conceding that Shank was Hickory's employee, he challenged the admissibility of the alleged statement against Hickory, insisting that it was not part of *res gestae*. Further examination of Schaefer elicited the written version of the conversation between the witness and Shank. Appellees insisted on it as evidence against both appellants. Over objection of appellants' counsel this was admitted against Hickory as well as its chauffeur.

Appellants' attorney drew from the witness the acknowledgment that it is perfectly possible that Shank said his "brakes mushed and the air released" *after* the collision; also, that it is possible Shank told him the brake trouble happened *when* he collided—not that it happened and *then* he collided. The witness maintained, however, that he put down what he [Shank] "told me first, when he did tell me it".

Another Police Department witness testified that the signal in question works on a 50-second cycle, that is, it takes 50 seconds from the beginning of one green and red phase to the beginning of the next green and red phase. On Milton Avenue it is 17 seconds green,

3 seconds amber, and 30 seconds red. On Orleans Street it is 27 seconds green, 3 seconds amber, and 20 seconds red. The amber overlaps the outgoing green light only.

When Shank took the stand he testified that the truck left North Carolina several days before the accident. No difficulty had been experienced with the brakes prior to the collision. He testified that as he approached Milton Avenue his speed was in the neighborhood of twenty-five miles an hour, which is permissible on that highway; that the light at Patterson Park Avenue, the first one to the west of Milton Avenue, was in normal operation; that while he was familiar with the general neighborhood he thought, when he saw no light at Milton Avenue, that it was simply turned off, not that it was defective. He further emphasized his version of his statement to the policeman. He insisted that his statement, as well as the fact itself, was that he found at the instant of the accident and not before, that he could not control the brake. There were no skid marks.

The president of Hickory testified that he had himself examined the brakes before the truck left on that particular trip, and they were in perfect working order and he so reported to the Interstate Commerce Commission. Also, that if the regular brake on the tractor failed to operate the automatic emergency device on the trailer would go into action as soon as the air pressure was reduced to sixty pounds or under, thus applying the necessary gripping force to enable him to stop the tractor-trailer within twenty-five or thirty feet.

The defendant Baugher testified (over objection interposed by Hickory) that at the hospital Shank told him: "When I hit my brakes I blew the air brakes and when I hit you I had no brakes."

In view of our conclusions, hereinafter set forth, it is not necessary to decide whether there was error in the admission of Shank's statement at the hospital over the objection of his employer Hickory, as part of the *res gestate*. We may assume, for present purposes only, that it was properly admitted.

From the foregoing facts the legal questions emerge. Our first inquiry properly is, what evidence is there of negligence on the part of the appellants? The appellees assert there is such evidence, because Shank "inferentially" admits a violation of the speed limit.

Their reasoning is that the limit on Orleans Street is 25 miles an hour, the traffic lights are set for a traffic flow at that rate, and that if Shank met green lights, as he testified, at Chester Street and at Patterson Park Avenue, four blocks and two blocks, respectively, west of Milton Avenue, and if he continued in the rhythm of that traffic, he would have met a green light at Milton Avenue. If he had reached Milton Avenue when the light was green, then, since the green light was not out of order, no accident would have happened. He must, therefore, so the argument goes, have speeded.

We cannot accept this reasoning. Shank reached Milton Avenue when the signal would have shown red, if it were in operation, but this is either because he exceeded the 25-mile rate, or fell below it, somewhere between Patterson Park Avenue and Milton Avenue. We are not permitted to guess from this that he proceeded faster rather than slower; nor may we speculate that, if for a short distance he drove faster, that it was at the Milton Avenue intersection rather than farther west. It happens frequently in driving along a boulevard with signal lights, that a vehicle having a green light at one intersection reaches a red light at the next. This is not proof of speeding. In any event, we fail to recognize a relation of proximate cause between the so-called "inferential," or more properly, as we think, speculative speed, and the happening of the collision.

No other negligence was ascribed to the appellants in respect to the "first accident," the collision between the two vehicles. There was some testimony from which it could be found that Baugher entered the intersection on an amber light, but this was not raised here, nor was the verdict in his favor appealed by any of the present parties.

It seems to us plain enough that the collision at the intersection occurred because Shank innocently thought himself entitled to the right of way, and in this he was misled by the appearances created by the defective signal device. We perceive no evidence of negligence on his part to which the collision between the two vehicles may fairly be attributed.

Decisions of this Court have settled the law of Maryland, that while a driver on a boulevard is not relieved of the duty of exercising care, yet in determining what is due care his right to assume that he has the right of way is an important factor. *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888, 136 A. L. R. 1485; *Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47. He is not required ordinarily to anticipate that a vehicle will cross in the path of oncoming traffic on the boulevard. Nor is it evidence of negligence that he failed to observe an unlighted signal and to anticipate the possibility that the same signal which is dark as he faces it may at the same time be inviting traffic on the side street to cross in his path. Many traffic signals operate on part-time, and their being unlighted constitutes no warning ordinarily of such danger as existed here.

We consider next another event, namely, the collision of the tractor-trailer with the appellees' house. Our inquiry is whether or not in what happened after the collision between the vehicles, the appellants were negligent. This brings us to a consideration of the testimony about the brakes. First we take up the alleged statement of Shank to the officer and to Baugher.

Interesting and important questions of the law of evidence which have been raised need not be answered to reach a decision in this case. We assume, for the present purpose only, that the challenged testimony about the brakes was properly admitted; but giving this testimony its maximum force we discover in it no sufficient basis for a finding of negligence. What it amounts to is merely proof that the brake failed to work, and this has been held not enough.

The fact that the tractor-trailer ran 54 feet after the collision with the automobile furnishes no ground for inferring negligence. In *Brooks v. Childress, supra,* this Court, speaking through Judge Collins, said, "Negligence cannot be proven from testimony as to what happened after the accident." 198 Md. 7. In that case several guard posts 125 feet away from the collision were knocked down.

In *Sonnenburg v. Monumental Motor Tours,* 198 Md. 227, 239, 81 A. 2d 617, 623, which resembles this case in some respects, the Court's opinion concluded with these significant words, "if the jury chose to disbelieve the driver's testimony then there would be no evidence at all as to what he did after the collision," that is the collision of the two vehicles, and before the bus in that case struck the house. So here, if the jury rejected such testimony there was nothing at all to show negligence. If the jury believed the direct testimony of the chauffeur or his alleged statements which were admitted in evidence, all that this would show is the failure of a brake, and nothing more.

To borrow Judge Markell's words in the *Sonnenburg* case, "The legislature has not declared an automobile a deodand or made it or its owner responsible for death or damage without fault." 198 Md. 236.

The doctrine of dangerous instrumentalities has not been extended to automobiles so as to impose liability without fault.

When a vehicle leaves a highway and crashes into a building, or a pedestrian on a sidewalk, the injured party may show the happening of the event and rest. In lieu of direct proof of negligence he may rely on the inference of negligence to be deduced from all the circumstances. In such a case it is said "the thing speaks for itself", or *res ipsa loquitur.* The burden of proof does not shift; but the defendant then has the obligation to go forward with his proof, which is sometimes called the risk of non-persuasion.

When the plaintiff invokes this procedure, thus putting his reliance upon the inference of negligence springing from the event, it has been authoritatively held that it must not appear by his own evidence, or the evidence adduced in his behalf, that causes for which the defendant was in no way responsible produced the injuries for which damages are sought. Such was the holding of this court, speaking through Chief Judge McSherry, in *Strasburger v. Vogel*, 103 Md. 85, 63 A. 202. This is still the law.

In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur*; and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little.

The evidence as to what Shank did and said was admitted at the instance of the plaintiff in the belief that it convicts the appellants of negligence. Actually, as we shall see, it does no such thing. This is not a case of a defendant attempting to rebut an inference from the circumstances of the accident. In such a case the jury would be free to disbelieve his testimony. Here the appellees are not in a position to repudiate their own evidence.

One effect of admitting it is to exclude any inference, from the absence of skid-marks, that the tractor-trailer ran into the house because of Shank's failure to use the brakes, since it appears from the plaintiff's evidence that Shank in fact applied the brakes. Another effect is to show that the brakes failed. If they failed after the first collision, as indicated in the policeman's oral testimony, then Shank is not to blame but Baugher; or the fault may be that of the Police Department which was not a party to the suit. If the brakes failed before the collision with Baugher, as indicated in the policeman's memorandum, then again Shank is free from negligence, for we have merely a showing of a brake's failure. No

case has been cited, and our research has not produced any, in which this alone has been held to be evidence of negligence. There are numerous cases which hold the contrary. For a well-reasoned case, where the rule is fully discussed, with citation of authority, see *Schaeffer v. Caldwell,* 273 App. Div. 263, 78 N. Y. S. 2d 652.

The case of a driver who took an old car off a lot and made no inspection of the brakes but drove down a steep hill is obviously distinguishable. *Kaplan v. Stein,* 198 Md. 414, 84 A. 2d 81. Distinguishable also is the case of *Sothoron v. West,* 180 Md. 539, 26 A. 2d 16, where the defendant drove a strange car down a steep hill, without bothering to check the brakes, and it was shown that an inspection would readily have disclosed the defect.

As in *Strasburger v. Vogel,* we are compelled to reverse the judgment, and as no recovery can be had a new trial will not be awarded.

On grounds of public policy and justice it may be debated whether in the absence of fault on the part of the owner and operator of the truck, they or the unquestionably innocent citizen asleep in his bed, whose home is crashed into and set on fire, should bear the loss. On the one side is the natural solicitude for the home and its occupants; on the other, is the social utility of transportation activities under modern conditions and the questionable wisdom of imposing upon such enterprise liability without fault. It may well be argued that in such cases the loss ought to be absorbed by the vehicle's owner and included in the cost of doing business just as in injuries covered by Workmen's Compensation the theory of liability without fault has been legislated into law. But these important considerations of social policy must be determined legislatively and not judicially.

No one can study this case without a feeling of sympathy for the appellees whose misfortune resulted from no fault of theirs; but we are not free on this record to permit an award against the appellants, whose negligence is likewise not shown. We could not do this without

inflicting injustice on them and upsetting the established rules of liability with ominous consequences in future cases.

*Judgment reversed, with costs.*