BLANKENSHIP *v.* WAGNER ET UX.

[No. 281, September Term, 1970.]

*Decided February 9, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Thomas F. Santer,* with whom were *Ashcraft & Gerel* on the brief, for appellant.

*Albert D. Brault,* with whom were *Brault, Scott & Brault* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

"The difficulties arising from the barrel of flour which

rolled out of a warehouse window in 1863 and into the lives of tort lawyers," [1] compounded by Baron Pollock's casual statement (*"res ipsa loquitur"*) during argument of the case *Byrne v. Boadle,* 159 Eng. Rep. 299 (1863) are still with us today.

In the case *sub judice* the plaintiff (appellant) was somewhat intimidated by Judge Sobeloff's comment in *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 263, 96 A. 2d 241 (1953), that "Paradoxically, the plaintiffs proved too much and too little." [2] Fearful of proving "too much" he called only the defendant property owner (appellee) who owned and controlled the steps in question and the plaintiff, who was injured when his co-worker fell through them. Relying on the doctrine of *res ipsa loquitur,* appellant rested his case. The lower court, on a timely motion, granted a directed verdict for defendant-appellees. The question before us on this appeal is whether the doctrine is applicable to the case at bar. The pertinent facts are as follows:

The appellant was employed as a delivery man for a company which made deliveries for Montgomery Ward stores. He and his co-worker were delivering a refrigerator-freezer to the appellees' house when the accident in question took place on July 12, 1968. They had placed the appliance on a dolly and were bringing it into the house via the rear steps and a porch which had been built by the husband-appellee in 1966. The appellant was ascending the steps ahead of his co-worker, who was moving the refrigerator and dolly up one step at a time by gripping the strap at the bottom of the dolly and lifting. Appellant was on the porch facing his co-worker below and was holding onto the handles of the dolly. When the co-worker began to lift the dolly up one more step, he

---

1. 2 A.L.R. 3rd 1399.
2. "In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur*; and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little." Hickory Transfer Co. v. Nezbed, 202 Md. at 263.

went through the second step, on which he was standing, and appellant therefore had to hold the refrigerator from above in order to keep it from falling on his co-worker. In doing so he "felt something snap in his back" and "felt pain in his back." He also noticed that the step on which his co-worker had been standing had broken in the middle. The co-worker is said to be approximately 6' 3" tall and to weigh between 230 and 240 pounds. It is not known how much the refrigerator-freezer weighed or how high it was except that it was high enough that the appellant could not see over it when standing. The record supports the fact that the refrigerator was not so heavy as to cause the first step to break when the co-worker, lifting from the bottom, placed his weight on that step. It was not until he reached the second step that he fell through.

Recently Judge Singley speaking for the Court in *Stoskin v. Prensky,* 256 Md. 707, 712, 262 A. 2d 48 (1970), made note of Chief Judge Bond's comments on *res ipsa loquitur* contained in the dissent in *Potomac Edison Co. v. Johnson,* 160 Md. 33, 40-41, 152 A. 633 (1930), in which he dismissed it as nothing more than "a common argumentative expression of ancient Latin brought into the language of the law by men who were accustomed to its use in Latin writings." [3] Whatever one's view may be on the subject it is as much with us today as when first applied by this Court in *Howser v. Cumberland & Pennsylvania Railroad Co.,* 80 Md. 146, 150-151, 30 A. 906 (1894), and it must be dealt with by both the bench and the bar.

For an understanding of the true nature of the doctrine we find no better expression of it than that set forth in *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 461, 67 A. 2d 251 (1949), wherein our predecessors said: "The doctrine *res ipsa loquitur* is not a rule of pleading. It relates to the burden of proof and sufficiency of evidence." See

---

3. To the same effect is Lord Shaw's comment in Ballard v. North British R. Co., Sess. Cas., H.L., 43 (1923), when he said of *res ipsa loquitur*: "If that phrase had not been in Latin, nobody would have called it a principle." W. Prosser, Law of Torts (3rd Ed. 1964) p. 217, note 93.

also, *Presumptions and Burden of Proof in Res Ipsa Loquitur Cases in Maryland,* 3 Md. L. Rev. 285, 288 (1939), by Roszel C. Thomsen, later Chief Judge of the U. S. District Court for the District of Maryland.

Judge Delaplaine discussed the characteristics of *res ipsa loquitur* and the reason for the rule in *Potts v. Armour & Co.,* 183 Md. 483, 487, 39 A. 2d 552 (1944), as follows:

> "* * * *Res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." [4]

In further discussing the rule he stated:

> "* * * The justice of the rule permitting proof of negligence by circumstantial evidence is found in the circumstance that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident. The rule is not applied by the courts except where the facts and the demands of justice make its application essential, depending upon the facts and circumstances in each particular case." [Also quoted by this Court in

---

4. Justice Holmes refined *res ipsa loquitur* as: "* * * a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case." Graham v. Badger, 41 N. E. 61 (Mass. 1895).

*Coastal Tank Lines v. Carroll,* 205 Md. 137, 145,
106 A. 2d 98 (1954).] 183 Md. at 488.

In order to invoke the doctrine of *res ipsa loquitur* in
Maryland certain circumstances must be shown by the
evidence. First, it must appear that the accident was of
such a nature that it would not ordinarily occur without
the defendant's negligence. *Williams v. McCrory Stores
Corp.,* 203 Md. 598, 601, 102 A. 2d 253 (1954) ; Cf. *Short
v. Wells,* 249 Md. 491, 496, 240 A. 2d 224 (1968). Sec-
ond, the plaintiff must demonstrate that the apparatus or
instrument which caused the injury was in the defen-
dant's exclusive control. *Smith v. Kelly,* 246 Md. 640,
644, 229 A. 2d 79 (1967). The third element is that it
must appear from the evidence that no action on the part
of the plaintiff or a third party or other intervening
force might just as well have caused the injury. *Johnson
v. Jackson,* 245 Md. 589, 593, 226 A. 2d 883 (1967) ; *Jof-
fre v. Canada Dry,* 222 Md. 1, 9, 158 A. 2d 631 (1960) ;
*Hickory Transfer Co. v. Nezbed, supra,* at 263. Cf. *Re-
statement (Second) of Torts,* § 328D (1965). Our state-
ment 'of the law is in accord with the prior decisions of
this Court, and when applied to the case at bar supports
the appellant's contention that the directed verdict should
not have been granted.[5]

The instant case does not fall neatly into the "classic
pattern" of *res ipsa* cases in which someone is struck by
a falling object. See *Bernheimer-Leader v. Burlingame,*
152 Md. 284, 136 A. 622 (1927), (wherein a pedestrian
was struck by a substance falling from a building in
course of construction) ; *Munzert v. American Stores
Co.,* 232 Md. 97, 192 A. 2d 59 (1963) (injury caused by
sofe drink cartons falling from handcart) ; *Leidenfrost
v. Atlantic Masonry, Inc.,* 235 Md. 244, 201 A. 2d 336
(1964) (wherein slag blocks fell from pile, injuring plain-

---

5. It is elementary that when there is a directed verdict such as
in this case, the court must consider the evidence and all logical
and reasonable inferences deducible therefrom in a light most fav-
orable to the appellants. Trusty v. Wooden, 251 Md. 294, 297, 247
A. 2d 382 (1968).

tiff). Nonetheless, it comes within the ambit of the doctrine and similar situations are not unknown to tort law in this country. In the cases of *DiMare v. Cresci*, 373 P. 2d 860 (Cal. 1962) a woman descending an exterior stairway in her apartment house was injured when one of the steps collapsed and she fell through. The court held that *res ipsa loquitur* was applicable, stating that steps do not ordinarily collapse unless the person having the duty to maintain and inspect them was negligent. In the earlier case of *Katz v. Goldring*, 260 N.Y.S. 796 (Sup. Ct., App. Div. 1932), the New York Court held in a per curiam opinion that *res ipsa loquitur* applied when a plumber's helper who was moving a washtub out of an apartment in the defendant's tenement house was injured as he paused to rest on a landing and it collapsed.

In the present case the plaintiff called the defendant as his witness and elicited the following answers concerning the control of the stairway:

"Q. Are you the owner of the home at which Mr. Blankenship has testified he was injured on July 12, 1968? A. Yes."

"Q. When did you purchase that home? A. 1950. I believe November, 1950.

"Q. Did you purchase it new? Was it a new home when you bought it? A. Yes.

"Q. You still live there today? A. Yes.

"Q. Do you own this house alone or do you and your wife both own it? A. My wife and I.

"Q. Prior to July 12, 1968, did you, in any way, repair or replace the steps in the back of your home?

"A. Yes, In 1966 I replaced the steps and the porch.

"Q. Did you do this yourself? A. Yes.

"Q. With the aid of anyone else? A. Actually, no.

"Q. Since the replacement of those steps in the

rear of the house up until July 12, 1968, did anyone repair or alter those steps? A. No."

Here the plaintiff proved the construction, maintenance and exclusive control of the steps to be within the dominion of the defendant. There is nothing in the evidence which tends to rebut the inference of negligence on the part of the defendant or to introduce a third party or other intervening factors into the case. Of course, on remand the defendant will have an opportunity to balance this inference by introducing evidence tending to show due care on his part or raising the probability that other factors beyond his control caused or contributed to the plaintiff's injury. In that event, and depending on the state of the evidence, a directed verdict may properly be granted, or the case be submitted to the jury for its consideration.

The appellees urge that the directed verdict granted below should be upheld and that the plaintiff not be allowed to rely on *res ipsa loquitur* because:

"* * * There was no showing whatever as to why the step collapsed. There was no showing as to whether or not the wood was defective or rotten, or whether or not it was the result of simply excess weight being placed upon it. There was no testimony as to whether the design was good, bad or indifferent, or whether the type of lumber used was proper or improper. In short, there was nothing more than the fact that the step collapsed placed in evidence."

* * *

"Among the multiple explanations of this accident, that would not involve negligence on the part of the defendants would be the invasion of termites or other insects that weakened the lumber; defective wood that was sold to the defendant; or perhaps some other person or agency

in some manner undermined the strength of the steps following their original installation."

Be that as it may, we think that what the plaintiff has proved shifted the burden to the defendants to come forward and explain that there was no negligence on their part which was the proximate cause of the accident. See *Munzert, supra,* at 104.

While we are of the opinion that the plaintiff might properly have attempted to prove more than he did without weakening his reliance on *res ipsa loquitur,* it was not incumbent upon him to prove absolutely that the defendant was negligent or to counter all other conceivable explanations of the accident during his presentation of the case. Indeed, in view of the language found in *Hickory Transfer Co. v. Nezbed, supra,* and the decisions which followed, we can understand the plaintiff's reluctance to proceed further than he did for fear of proving "too much and too little."

We think it may well be appropriate in this opinion to address ourselves to the somewhat restrictive interpretation of the "too much and too little" holding in *Hickory Transfer Co. v. Nezbed, supra,* which has arisen in subsequent cases.

Early in this Court's consideration of *res ipsa loquitur* we held that when a plaintiff relies on the doctrine and its attendant inferences, it must not appear from *the plaintiff's own evidence* that something other than the defendant's negligence caused the accident. See *Hickory Transfer Co. v. Nezbed, supra,* at 263; *Strasburger v. Vogel,* 103 Md. 85, 90, 63 A. 202 (1906). This concept was logically extended so that "where all of the facts and circumstances are shown by testimony," whether it was introduced by plaintiff *or defendant,* and that evidence shows that the injury might have been caused by something other than the defendant's negligence, *res ipsa loquitur* would not apply, because there would no longer be any need for relying on an inference. *Coastal Tank Lines, Inc. v. Carroll,* 205 Md. 137, 144, 106 A. 2d 98 (1954). In *Smith v. Bernfeld,* 226 Md. 400, 409, 174 A. 2d 53

(1961), Chief Judge Brune, speaking for the Court, stated that the *attempt* by the plaintiffs in that case to prove specific grounds of negligence precluded their relying on the doctrine of *res ipsa loquitur*. However, in *Nalee, Inc. v. Jacobs*, 228 Md. 525, 532, 180 A. 2d 677 (1962), an opinion also written by Chief Judge Brune only 7 months after *Smith v. Bernfeld*, he explained that the attempts by the plaintiffs in *Smith* to establish specific grounds of negligence had precluded their relying on *res ipsa loquitur only* because they had *proved all of the facts* regarding the accident and were unable to show that the defendant's negligence caused the injury. He specifically disavowed any intention in *Smith* of extending the rule of the earlier cases. For a general commentary on this subject up to and including *Smith v. Bernfeld*, but not *Nalee*, see 22 Maryland Law Review 174 (1962).

If the plaintiff has circumstantial evidence which tends to show the defendant's negligence (and which is therefore *consistent* with the inference relied upon in *res ipsa loquitur*) he should not as a matter of policy be discouraged from coming forth with it. If, however, the evidence introduced by the plaintiff or the defendant shows that everything relative to the case is known, and that the injury might have been caused by something other than defendant's negligence (thereby negating the inference normally relied upon in *res ipsa loquitur*), then the plaintiff will not be allowed to avail himself of the doctrine. In such a case, if plaintiff's proof fails to make out a *prima facie* case of negligence then it is proper to direct a verdict for the defendant. *Lee v. Housing Authority,* 203 Md. 453, 465, 101 A. 2d 832 (1954).

We think it important to note that the only reason advanced by the lower court for not applying the doctrine of *res ipsa loquitur* in the case at bar was that the use of the steps in this case, in its opinion, was not an ordinary one. The Court stated:

> "Of course, Mr. Santer [counsel for the plaintiff] says, 'Well, this is a perfect case for res ipsa loquitur,' Frankly this court cannot

agree on that because we feel that in the ordinary use of the steps this would not have happened. This was something completely out of the ordinary and entirely different from an ordinary person stepping on the steps and going up. It was an unusual occurrence in itself having [the weight of] this heavy refrigerator [on them]."

We find nothing unusual or extraordinary about the plaintiff's use of the steps in this case. In a society as mobile and "possession-oriented" as ours it was to be expected sometime during the life of the house, that items such as refrigerators and other heavy appliances and pieces of furniture would be moved into and out of the dwelling and that the rear steps and back porch would logically be used for that purpose. Moving a refrigerator into a house may not be a daily or even yearly occurrence; yet, it is not so far removed from human experience or reasonable expectation as to be considered unusual. Additionally, we are of the opinion that this accident was not the kind which would ordinarily occur unless someone was negligent in constructing, maintaining or inspecting the steps in question.

The appellees on appeal have raised the question as to whether the appellant, as plaintiff below, should not have been required to amend his answer to the defendants' interrogatories so as to advise them that he was abandoning his claim of specific negligence and relying on the doctrine of *res ipsa loquitur*. We find no merit to this contention. Interrogatories relate to the facts and the doctrine of *res ipsa loquitur* is not a fact but a theory of the case. Likewise, the doctrine is not a rule of pleading. It relates to the burden of proof and sufficiency of evidence. *Bohlen v. Glenn L. Martin Co., supra.*

We are of the opinion that the judgment of the lower court should be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for new trial, appellees to pay costs.*