RAMSEY ET AL. *v.* D.P.A. ASSOCIATES ET AL.

[No. 305, September Term, 1971.]

*Decided April 10, 1972.*

320

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SMITH, JJ.

*Thomas L. Starkey,* with whom was *Eugene E. Pitrof* on the brief, for appellants.

*Laurence T. Scott,* with whom were *Brault, Scott & Brault* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This case does not come within the comment of Chief Judge Sobeloff in *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 263, 96 A. 2d 241 (1953), quoted by Judge Finan in *Blankenship v. Wagner,* 261 Md. 37, 39, 273 A. 2d 412 (1971), that "the plaintiffs proved too much and too little." Rather, the situation here is that the plaintiff proved too little. It is another glass door case.[1]

It all began on May 22, 1968, when plaintiff Michael S. Ramsey, then four years old, visited an aunt and played tag with a cousin and a little boy who lived next to his aunt. Michael's father, Owen D. Ramsey, brought suit, individually and as father and next friend of Michael, against the appellees who owned the apartment building. The trial judge (Loveless, J.) directed a verdict in favor of the defendants at the end of the plaintiff's case. We shall affirm.

The case is submitted to us on an agreed statement of facts. We shall consider those facts and all logical and reasonable inferences deducible therefrom in a light

---

1. *See* Blanco v. J. C. Penney Co., 251 Md. 707, 248 A. 2d 645 (1968), and Stein v. Overlook Joint Venture, 246 Md. 75, 227 A. 2d 226 (1967).

most favorable to the plaintiffs. *Harrison v. Harrison,* 264 Md. 184, 190, 285 A. 2d 590 (1972).

It seems that Mike and other children had been playing outside. They were resting on the steps inside the apartment building. Michael's aunt told them to go outside. A plate glass door separated the interior hallway of the apartment building from the exterior landing. The glass collapsed, injuring Michael, when he pressed on the glass in an attempt to leave the building.

The door was framed in metal. On the inside there was a push bar approximately four feet from the floor. Michael was about 32 inches tall at the time of the accident. There was testimony that children had been told to push on the side of the door, that to do otherwise was unsafe. Subsequent to the accident a second push bar "at child's level" was added to this and other doors in the apartment buildings in the development. It was established that about a month earlier another individual was injured through the breaking of a glass door and that a suit was then pending in Prince George's County as the result of that incident. No evidence concerning the circumstances of that incident was presented.

Appellants ground their appeal on two bases. The first is that appellees were negligent in failing to have a push bar at what might be called "child level." They see the later installation of such a push bar as evidence of negligence. Therefore, they say, the trial judge erred in taking the case from the jury on this theory and under their second theory which is that the doctrine of *res ipsa loquitur* is applicable.

I

The general rule is that a presumption of negligence on the part of the owner or lessee does not arise merely by showing that an injury has been sustained by a person rightfully on the premises, *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 460, 67 A. 2d 251 (1949), for the owner is not an insurer of the safety of such persons. *Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 457, 177 A.

2d 263 (1962). It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. *Pinehurst Co. v. Phelps,* 163 Md. 68, 73, 160 A. 736 (1932). In *Long v. Joestlein,* 193 Md. 211, 66 A. 2d 407 (1949), Judge Delaplaine said for the Court:

> "It is an accepted principle in the law of negligence that, in the construction and maintenance of a building, the owner discharges his obligation to. exercise due care toward those to whom he owes a duty to keep the premises in a reasonably safe condition if he conforms to established custom in the particular instance, provided that such customary method of construction and maintenance is not inherently dangerous or obviously improper. *Bruce v. Baer,* Mo. App., 76 S.W.2d 423." *Id.* at 216-17.

We find relevant *Elmar Gardens.* There the plaintiff saw a door with some glass in it closing on his son. He held out his hand, striking the glass, in an effort to stop the door. The glass shattered and he was seriously injured. In denying liability, Judge Marbury said for the Court:

> "[I]t was necessary for the appellee not only to show the happening of the accident but also negligence on the part of the appellant. No proof was offered of any defect in the installation of the glass other than the appellee's intimation that the wooden strips holding it to the door frame were insecurely fastened, and no proof that the appellant had knowledge of such condition, if it existed, or that by the exercise of reasonable care the landlord ought to have known of the defect in time to have it corrected. This intimation, together with the appellee's opinion as to the thinness of the glass, standing alone was not sufficient to warrant the jury in

inferring negligence on the part of the appellant. Cf. *Ambassador Apartment Corp. v. McCauley*, 182 Md. 275, 34 A. 2d 333." *Id.* at 458.

In *Stein v. Overlook Joint Venture*, 246 Md. 75, 227 A. 2d 226 (1967), there was evidence of the failure of the defendant to replace decals on glass panels which had previously been accidentally broken. Judge Horney there said for the Court that from that "negligence could be inferred." There is no evidence here that a bar had been on the door and had been removed.

In many respects the case is reminiscent of *Benedick v. Potts*, 88 Md. 52, 40 A. 1067 (1898), where an individual was injured on a miniature railroad at Tolchester Beach in Kent County. The plaintiff there was on the car when it entered the tunnel, but was not on the car when it emerged from the tunnel. He was found in an unconscious state in the tunnel. There was no defect in or abnormal conditions affecting the means of actual transportation. Chief Judge McSherry there said for the Court:

"What caused the appellant to be out of the car is a matter of pure conjecture. No one has explained or attempted to explain how he got where he was found. Indeed the two persons who occupied the front seat were ignorant of the appellant's absence from the car until it had reached its destination, and the appellant himself distinctly testified that he did not relax his hold to the car and did not attempt to rise but lowered his head as he entered the tunnel. All that is certain is, that he was injured in *some* way and he asks that the jury may be allowed, in the absence of all explanatory evidence, to infer that some act of a negligent character for which the appellee is responsible, caused the injury sustained by the appellant. No case has gone to that extent and no known principle can be cited to sanction such a posi-

tion. There has been no circumstance shown which furnishes the foundation for an inference of negligence." *Id.* at 59. (Emphasis in original.)

The matter of legally sufficient evidence was summed up for the Court by Chief Judge Prescott in *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549 (1965), where he said:

"The words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value. *State v. Hopkins,* 173 Md. 321, and cases cited; *Hevell v. Balto. Transit Co.,* 173 Md. 327; *Haddock v. Stewart,* 232 Md. 139. Cf. *Commissioners, etc. v. Clark,* 94 U. S. 278 (not a negligence case)." *Id.* at 247.

The fact that the appellees placed a bar at child height across the door subsequent to the accident is, as argued by the appellees in their brief, of no more significance as evidence of negligence than if they had replaced the door with a solid walnut door. There was no evidence in this case that the landlord had any notice of any dangerous characteristics of the glass door. There was no evidence that the glass failed to measure up to some accepted standard. There was no evidence that a bar of child height was the norm or standard expected for such doors. In short, appellants presented no evidence of negligence on the part of the appellees.

## II

Our most recent *res ipsa* case was *Leikach v. Royal Crown,* 261 Md. 541, 276 A. 2d 81 (1971). There Chief Judge Hammond said for the Court:

"*Munzert v. American Stores*, 232 Md. 97, 104, sets out the three criteria necessary for successful reliance on the doctrine of res ipsa loquitur as:

1. A casualty of a sort which usually does not occur in the absence of negligence.
2. Caused by an instrumentality within the defendant's exclusive control.
3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff." *Id.* at 547-48.

In *Blankenship v. Wagner*, 261 Md. 37, a step collapsed under the weight of an individual in the process of delivering a refrigerator-freezer to the home of the defendant. A directed verdict in favor of the defendant was granted at the end of the plaintiff's case. We remanded for a new trial. Appellants see *Blankenship* as aiding them here. We do not. There is a substantial difference from the standpoint of control between a stairway in a private dwelling and a glass door in a place open to the public such as an apartment complex.

This case is more nearly akin to *Lee v. Housing Auth. of Baltimore*, 203 Md. 453, 101 A. 2d 832 (1954), where a gas hot water heater exploded in the pantry of a home owned by the Housing Authority. Judge (later Chief Judge) Henderson said for the Court:

"In the case at bar the control retained by the Housing Authority, as landlord, was a qualified one, and there was at least the possibility of access by others. It did not manufacture the heater but merely installed it. Cf. *State v. Consol. Gas Etc. Co.*, 146 Md. 390, 397, and *McCabe v. Boston Consol. Gas Co.*, 50 N.E.2d 640 (Mass.). The fact that it operated perfectly for a month or six weeks prior to the explosion would tend to show that it was properly installed. Cf. *Walker v. Vail*, [203 Md. 321], and *Gmurek v. Kajder*, 203 Md. 437." *Id.* at 463.

It also is akin to *Smith v. Kelly*, 246 Md. 640, 229 A. 2d 79 (1967). There a suit was brought "as the result of [an individual's] being struck by a piece of drum of an extractor which broke off and was flung from the drum which contained a spinner basket revolving at 1750 r.p.m." in a laundromat. Judge Marbury said for the Court:

> "The extractor located on appellees' premises was in constant use for various periods of time by members of the public who had exclusive possession and control over it while it was in use. The doctrine of *res ipsa loquitur* is not available in this case since the machine was not in the sole control of appellees. *Williams v. McCrory Stores Corp.*, [203 Md. 598, 102 A. 2d 253 (1954)], *Buria v. Rosedale Engineering Corp.*, 7 A. D. 2d 486, 184 N.Y.S.2d 395 (1959), *motion for leave to appeal denied*, 7 N.Y.2d 706, 162 N.E.2d 753 (1959). The doctrine also is not applicable to this case because of the opportunity for intervening forces to have contributed to the machine's malfunction through no fault of appellees. *Dorsey v. General Elevator*, 241 Md. 99, 215 A. 2d 757; *Brookshire v. Florida Bendix Co.*, 153 So. 2d 55 (Fla. App. 1963)."
> *Id.* at 644.

A glass door through which occupants of an apartment house and their guests constantly pass and repass is not under such exclusive control of the landlord as to permit invocation of the *res ipsa* doctrine.

> *Judgment affirmed; appellants to pay the costs.*