ALLAN H. MOODIE AND MEYER W. JACOBSON v.
ANTOINETTE SANTONI, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MARIO SANTONI

[No. 54, September Term, 1981.]
*Decided January 28, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*B. Ford Davis,* with whom were *William B. Whiteford* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellants.

*Stuart M. Salsbury,* with whom were *Max R. Israelson* and *Israelson & Jackson, P.A.* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We took this case to decide what we considered to be important public issues. However, without reaching such issues, we conclude that the Court of Special Appeals erred in its determination that the issue of contributory negligence here was not one for the jury. Accordingly, we shall be obliged to reverse the judgment of that court contained in *Santoni v. Schaerf,* 48 Md. App. 498, 428 A.2d 94 (1981).

The unfortunate set of circumstances here were fully related by Judge Moylan for the Court of Special Appeals. Mario Santoni died in July of 1972. His death was caused by hepatitis. Santoni was subjected to a test for tuberculosis as a part of his physical examination when he was hired as a custodian by the City of Baltimore in January 1972. Because T.B. bacilli were found present in his body, he was referred to a chest clinic of the Baltimore City Health Department. For purposes of preventative therapy he was placed on the drug known as Isoniazid (INH), which had been widely used for a number of years for the prevention and treatment of tuberculosis. However, there came a time when the United States Public Health Service had some doubts relative to the

safety of the drug. It believed that INH might be a cause of hepatitis. For that reason it recommended certain procedures calculated to minimize undue harm arising from the use of this drug. These procedures included that patients receive only one month's supply of INH at any given time, that each recipient of the drug would be questioned each month in an effort to determine whether he had symptoms of hepatitis, and that reports relative to this questioning would be submitted to the U.S. Public Health Service on cards prepared for this purpose.

Relevant facts concerning Santoni's treatment and that which took place immediately prior to his death were set forth by the Court of Special Appeals:

"Mr. Santoni faithfully went to the clinic each month to receive his monthly supply of the medication. He believed that in order to work for the City he had to take the isoniazid and regularly took his pills. In March, 1972, Mr. Santoni began to experience fatigue and decreased appetite. By April, he noted fullness, abdominal discomfort, and increased flatulence. By May, fatty food intolerance became evident, his stools became lighter, and his urine became darker. By early June, Mr. Santoni began to look worse and to feel more tired. His final visit to the clinic was on June 12, 1972.

"During the month of May, Mr. Santoni began to look more pale and began to experience more gastric discomfort. His wife was away for a month at the shore with other members of her family. He complained about his condition to a neighbor. When Mrs. Santoni returned home in mid-June, she became concerned about her husband's condition and consulted her doctor. The doctor prescribed coantigel and librium for her husband's stomach problems and nerves. When Mr. Santoni's condition became worse. Mrs. Santoni called Dr. Joseph Notarangelo at Mercy Hospital. Mr. Santoni was admitted to the hospital on June 22, 1972.

"At the time of Mr. Santoni's admission to Mercy Hospital, he complained of excessive gas and indigestion and gave a fairly detailed history of his illness. He did not, however, know that he was jaundiced. At the hospital, Mr. Santoni was diagnosed as suffering from hepatitis. There is no treatment for the disease, only care to prevent complications. Despite the absence of any complications, Mr. Santoni's condition deteriorated rapidly and he died on July 3, 1972. Expert testimony placed the cause of death as a toxic reaction to isoniazid, causing hepatitis." 48 Md. App. at 503-04.

There was testimony that if Santoni had ceased taking the offending drug as little as two weeks before he entered the hospital "his chances would [have] be[en] quite remarkably improved." The record contains copies of the computer cards which were completed after each of Santoni's visits to the clinic and were forwarded to the Public Health Service. On the face of each card was a place for noting the number of INH pills taken during the preceding month. Reasons for not issuing pills were listed with provisions for check marks and spaces for further specification. These reasons included such things as adverse reaction, suspected hepatitis, and other illness. The back of the cards provided for questioning about various medications taken during the preceding month and for questioning relative to the consumption of alcohol and tobacco. The card for the visit on May 16, 1972, has written on it "no problem" after "adverse reaction." On the back, the word "none" is written concerning the various medications. The amount of alcohol consumed and the number of packs of cigarettes smoked are recorded. The June 12 card shows "not" on its face after "adverse reaction," with entries on the back similar to those for May. Thus, the cards provide a clear basis for an inference that Santoni was questioned and that he provided the responses recorded. Testimony was also before the court that established procedures called for noting at each visit on the City's own record, called a "Chemoprophylaxis Register Sheet," any adverse reactions. That sheet also is a part of the record. It contains reference

to each of the visits by Santoni, including a comment as to how many "tablets [were] left" from the previous visit, but it indicates no adverse reactions.

Santoni's widow and personal representative brought suit against certain physicians and others for Santoni's wrongful death. The court submitted the case to the jury on issues. The jury found Santoni to have been guilty of contributory negligence. The Court of Special Appeals held as a matter of law there was insufficient evidence to warrant a determination that Santoni was guilty of contributory negligence. Hence, it reversed and remanded the case for retrial on the issue of damages. We then granted the writ of certiorari.

Evidence was adduced at trial which indicated that the Baltimore City Health Department regularly followed the protocol established by the Public Health Service, that each time patients came in for INH each was questioned relative to any symptoms he might have noticed, that the importance of reporting such symptoms was stressed, that periodic spot checks reflected compliance with these protocols, and that the records did not reveal Santoni's having disclosed any symptoms of hepatitis to those persons who questioned him at the clinic.

The burden of proving contributory negligence is on the defendant. *Baltimore & O.R.R. v. Plews,* 262 Md. 442, 454, 278 A.2d 287 (1971), and *Gresham v. Comm'r of Mot. Veh.,* 256 Md. 500, 509, 260 A.2d 649 (1970). In determining whether the evidence warrants an instruction that a plaintiff is free of contributory negligence as a matter of law, the evidence must be submitted to the same test used in determining whether a defendant is guilty of negligence as a matter of law. Additionally, the evidence must be considered in a light most favorable to the defense. *Brown v. Ellis,* 236 Md. 487, 491, 204 A.2d 526 (1964). In *Menish v. Polinger Company,* 277 Md. 553, 356 A.2d 233 (1976), Judge O'Donnell said for the Court:

> "In measuring contributory negligence, the standard of care to be used as the criterion is that of an ordinarily prudent person under the same or sim-

ilar circumstances, not that of a very cautious person. *Sanders v. Williams,* 209 Md. 149, 153, 120 A.2d 397, 399 (1956); and what an ordinarily prudent and careful person would do under a given set of circumstances is usually controlled by the instinctive urge of one to protect himself from harm. *Greer Lines Company v. Roberts,* 216 Md. 69, 79, 139 A.2d 235, 239 (1958); *Martin v. Sweeney,* 207 Md. 543, 548, 114 A.2d 825, 827 (1955)." 277 Md. at 559.

\* \* \*

"Before the doctrine of contributory negligence can be successfully invoked, it must be demonstrated that the injured party acted, or failed to act, with knowledge and appreciation, either actual or imputed, of the danger of injury which his conduct involves. *Hooper v. Mougin,* 263 Md. 630, 634, 284 A.2d 236, 239 (1971); *Rogers v. Frush,* 257 Md. 233, 239, 262 A.2d 549, 552 (1970); *Honolulu, Ltd. v. Cain,* 244 Md. 590, 599, 224 A.2d 433, 438 (1966); *Tie Bar, Inc. v. Shartzer,* 249 Md. 711, 715-16, 241 A.2d 582, 585 (1968); *Sanders v. Williams, supra,* at 152, 120 A.2d at 399. Stated another way, when one who knows and appreciates, or in the exercise of ordinary care should know and appreciate, the existence of danger from which injury might reasonably be anticipated, he must exercise ordinary care to avoid such injury; when by his voluntary acts or omissions he exposes himself to danger of which he has actual or imputed knowledge, he may be guilty of contributory negligence. *Burkert v. Smith,* 201 Md. 452, 456-59, 94 A.2d 460, 461-63 (1953); *Yaniger v. Calvert Bldg. and Constr. Co.,* 183 Md. 285, 291, 37 A.2d 263, 265 (1944)." *Id.* at 560-61.

Maryland has gone about as far as any state in holding that meager evidence of negligence is sufficient to carry a case to the jury. *See, e.g., Fowler v. Smith,* 240 Md. 240, 213

A.2d 549 (1965), where Chief Judge Prescott said for the Court:

> "Negligence is a relative term and must be decided upon the facts of each particular case. Ordinarily it is a question of fact to be determined by the jury, and before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. *Kantor v. Ash,* 215 Md. 285. Cf. *Suman v. Hoffman,* 221 Md. 302. And Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Ford v. Bradford,* 213 Md. 534. Cf. *Bernardi v. Roedel,* 225 Md. 17, 21. However, the rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are involved must be submitted to a jury. The words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value. *State v. Hopkins,* 173 Md. 321, and cases cited; *Hevell v. Balto. Transit Co.,* 173 Md. 327; *Haddock v. Stewart,* 232 Md. 139. Cf. *Commissioners, etc. v. Clark,* 94 U. S. 278 (not a negligence case). The rule, stated in slightly different terms, is that where the facts are undisputed, or the facts most favorable to

the party carrying the burden of establishing another party's negligence are assumed to be true and all favorable inferences, fairly deducible therefrom, are drawn in favor of the burden-carrying party, and such undisputed facts (or the said favorable facts and inferences) lead to conclusions from which reasonable minds could not differ, then the question of negligence, *vel non,* becomes a question of law. *Bernardi v. Roedel; Suman v. Hoffman; Kantor v. Ash,* all *supra."* 240 Md. at 246-47.

*Accord, Vann v. Willie,* 284 Md. 182, 185, 395 A.2d 492 (1978); *Beahm v. Shortall,* 279 Md. 321, 341-42, 368 A.2d 1005 (1977); *Curley v. General Valet Service,* 270 Md. 248, 264, 311 A.2d 231 (1973); *Worthington Constr. v. Moore,* 266 Md. 19, 22, 291 A.2d 466 (1972); *Ramsey v. D.P.A. Associates,* 265 Md. 319, 324, 289 A.2d 321 (1972), and *Trusty v. Wooden,* 251 Md. 294, 299, 247 A.2d 382 (1968) (quoting Fowler). What is meant by "conjecture, pure and simple" is aptly illustrated by the facts of *Gatling v. Sampson,* 242 Md. 173, 218 A.2d 202 (1966), where Chief Judge Prescott said for the Court, "We fear that the jury would have had to have discovered a fourth inscription on the Rossetta Stone in order to have deciphered the above [testimony] intelligently, or with any reasonable assurance of the accuracy of its interpretation." 242 Md. at 183. In *Wiggins v. State, Use of Collins,* 232 Md. 228, 192 A.2d 515 (1963), Judge Horney said for the Court:

"The absence or presence of contributory negligence is generally a question for the jury. *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81 (1946). It is only where the minds of reasonable persons cannot differ that the court is justified in deciding the question as a matter of law. *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 51 A.2d 292 (1947); *Thomas v. Baltimore Transit Co.,* 211 Md. 262, 127 A.2d 128 (1956); *Boyd v. Simpler,* 222 Md. 126, 158 A.2d 666 (1960). And if there is no evidence of acts or conduct from which reasonable minds could find or infer

negligence on the part of a plaintiff, it would be error not to withdraw the issue of contributory negligence from the consideration of the jury. *Lindenberg v. Needles,* 203 Md. 8, 97 A.2d 901 (1953); *Thomas v. Baltimore Transit Co., supra."* 232 Md. at 237.

In *Plitt v. Greenberg,* 242 Md. 359, 367-68, 219 A.2d 237 (1966), the statement is made, "[T]his Court has always maintained that if there be any legally relevant and competent evidence, *however slight,* from which a rational mind could infer a fact in issue, then a trial court has invaded the province of the jury by declaring a directed verdict." (Emphasis in original; citing authorities.)

The Court of Special Appeals said in the scholarly opinion discussing this case, "The rule is that the inferred fact must follow more likely than not from the predicate fact for the jury even to be permitted the option of inferring." 48 Md. App. at 518. It then went on to say, "An inferred fact that is only equally probable is not a permitted inference because, by definition, if it is only 'equally probable,' it is not 'more probable.' " *Id.* The court continued, "There was a possibility of contributory negligence. One could speculate that there might have been contributory negligence. Contributory negligence was not, however, a more likely than not conclusion to draw from the ambiguous factual predicate erected by the defendants." *Id.* at 518-19. Although this may possibly have been intended as an articulation of what this Court said in *Short v. Wells,* 249 Md. 491, 240 A.2d 224 (1968), in considering the sufficiency of evidence required to create a jury question as to ordinary negligence, the opinion of the Court of Special Appeals does not correctly state the Maryland law. The proper test is that set forth by Judge Hammond for the Court in *Lindenberg v. Needles,* 203 Md. 8, 15, 97 A.2d 901 (1953), when he said that one would be entitled to an instruction that he was free of contributory negligence "if there was no evidence from which a reasonable mind could find or infer that he had directly contributed to his own injury by behaving as an ordinarily prudent man would not behave, under the circumstances." Put slightly differently, in the

words of Judge Prescott for the Court in *Kantor v. Ash,* 215 Md. 285, 293, 137 A.2d 661 (1958), for Santoni to have been free of contributory negligence, as a matter of law, there must be "no evidence of acts or conduct from which a reasonable mind could find or infer negligence on [his] part . . . ."

Given the testimony adduced on behalf of the defense that the Baltimore City Health Department was strictly following the protocol established by the U.S. Public Health Service; that this protocol include questioning each patient relative to his symptoms each time he visited the clinic and emphasizing to each patient the importance of reporting those symptoms which might be indicative of hepatitis; that the nursing supervisor testified regarding the procedures followed, which were in accord with those of the Public Health Service; that evidence of spot checks reflected compliance with established procedures, and that notations on Santoni's card indicate that he was questioned each time he went to the clinic but that he reported no symptoms of hepatitis, we think there was evidence, if believed, from which the jury could infer that Santoni failed to heed instructions and hence was guilty of contributory negligence. Accordingly, the question of contributory negligence was for the jury.

Because of the theory upon which the Court of Special Appeals determined Mrs. Santoni's appeal, it was not obliged to address certain of her contentions. Therefore, those questions must be considered on the remand.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court for consideration of undecided issues; appellee to pay the costs.*